The TRAVELERS INSURANCE COMPANY, Appellant,

v.

Homer C. PIERCE, Appellee.

No. 3733.

Court of Civil Appeals of Texas.

Eastland.

June 29, 1962.

Rehearing Denied July 20, 1962.

Mays, Leonard, Moore & Dickson, Sweetwater, for appellant.

Robinson, Wilson & Graham, Abilene, for appellee.

COLLINGS, Justice.

This is a workmen's compensation case. Homer C. Pierce brought suit against The Travelers Insurance Company seeking total and permanent compensation for alleged injuries to his head, neck and back. Based upon a jury verdict, judgment was rendered

in favor of the plaintiff for total and permanent disability. The Travelers Insurance Company has appealed.

It was found by the jury that appellee's incapacity is not confined solely to his left arm and that appellee sustained total and permanent disability from September 28, 1960, as a natural result of the injury sustained by him on that date. It is contended in appellant's 1st and 2nd points that such findings are so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust and that the trial court erred in rendering judgment thereon. Appellant admits that appellee sustained an injury but denies that he sustained total and permanent disability. In this connection appellant particularly urges a consideration of the fact that appellee did considerable manual labor after his accidental injury; that he made $200.00 a week, and since the injury he has earned more than he did during the same length of time immediately preceding the accident. Appellant also urges the fact that there was a period of almost nine years prior to the accidental injury in which appellee did not rely upon manual labor for a living but made $250.00 a week as business agent for his union.

The evidence shows that appellee was 48 years of age at the time of his injury on September 28, 1960; that he had worked as an operating engineer, rigger or iron worker for 26 years, and at the time in question was a rigger or iron worker for G. & N. Steel Corporation. He was working on the Shep Site Missile Base in Taylor County, unloading steel from a truck. The steel was fabricated and in curved bundles about 45 to 50 feet long with eight bars to the bundle, each bar approximately 2¼ inches in diameter. The evidence indicated that as the crane operator lifted a bundle of these steel bars it hung on one end and that Homer Pierce climbed on the truck bed and with the assistance of a fellow worker on the opposite side of the truck tried to pry it loose with a 2 X 4 so that it could be un-loaded; that when the crane operator attempted to lift the bundle, the entire load flopped over and the end of the load swung around and hit appellee in the stomach knocking him backward; that it knocked appellee's left elbow into other steel bundles on the truck, and he was thrown through the air and landed on his back about 20 feet away. There was evidence to the effect that appellee thereby suffered injury to his neck, low back and left arm and elbow. Appellee, together with another man who was hurt in the same accident, was rushed to a hospital in Abilene where he remained for about a week. He was treated by Dr. Bray who was called as a witness by appellant. Dr. Bray operated on appellee's left arm and took out the head of the radius which had been fractured. The left arm was placed in a cast. Appellee was released from the hospital and about 10 days later went back on the job although his arm was still in a cast. He received the same pay before and after the accident. He testified that he did not perform the duties of a rigger as he had before, but was provided a pickup to ride around in. He stated that he had been put on the payroll to help him out. He admitted that he remained on that job until the latter part of December, but stated that he actually was not able to do the work; that his neck would get to hurting him bad, and he would get dizzy and feel like he was going to fall off the crane upon which he worked. Appellee did, however, work intermittently until July of 1961. He said that he had to work to support his family, but that he continued to have pain and that when he worked he was in "pain and misery." Appellee wore the cast on his arm for approximately 6 weeks. He continued to see the doctor for the stiffness in the elbow joint and the pain in his back and neck. Appellee testified that he did not believe his condition was improving; that when he tries to work he has pain across his back and legs; that his legs get numb and go to sleep; that he feels like he is just as bad, if not worse than shortly after he got hurt.

A few weeks after the cast was removed from appellee's arm Dr. Bray put fluid in his elbow joint by means of a needle. The doctor took X-rays of his neck in December 1960, and, appellee thought, took X-rays of his back and legs. Dr. Bray continued to treat appellee until the latter part of December. On December 29, 1960, the doctor took X-rays of appellee's neck and wrist because of complaints of pain by appellee. On March 1, 1961, appellee again saw Dr. Bray and complained of soreness and pain in his neck, elbow and wrist. The doctor then referred appellee to Dr. Billy Burdeaux in Houston, who later examined and treated appellee. Trial of this cause began on September 20, 1961 and at that time appellee had not worked since July of that year. Dr. Bray testified that he could find no evidence of injury to any portion of appellee's body except his left arm. He did not say that appellee could obtain and retain a job involving manual labor, but did say that he thought appellee could get a job in the field in which he had been working.

Appellee was also treated by Dr. R. H. Tull, Sr., of Abilene. He was first treated by this doctor on December 30, 1960, and at that time Pierce was complaining of his neck, low back and elbow. Dr. Tull testified, on the basis of his examination and treatment, that appellee had injuries to his neck, his back and his wrist and elbow; that X-ray pictures showed injury to the bony structure of the lower part of appellee's back. After Dr. Tull's first examination and treatment of appellee, he saw him seven or eight times. Dr. Tull stated that, in his opinion, appellee could not perform manual labor consistently; that he could not pass appellee for employment at manual labor, and that the fall which appellee had suffered was the producing cause of his disability. Dr. Tull testified that, in his opinion, this condition of appellee was permanent.

█ As contended by appellant and as shown by the facts of the case as above substantially set out, there was evidence inconsistent with the finding that appellee was totally and permanently disabled. The testimony of Dr. Bray who was called by appellant was to the effect that appellee was not totally and permanently disabled. There was also evidence to the effect that appellee, himself, had made statements in applying for work that he had no physical disability. Such evidence, however, simply presented a fact issue for jury determination. After a consideration of the evidence as a whole, we are of the opinion and so hold that the findings of the jury complained of are not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Numerous cases hold that the fact that an injured claimant continues to work after an accident and makes as much or more money than he did before, does not conclusively show a lack of total disability, nor does it necessarily render a jury finding of total and permanent disability against the great weight and preponderance of the evidence.

In several points appellant contends that argument of appellee's attorney to the jury presents prejudicial error and that the court erred in failing to so hold. We have carefully considered these points and find that they are not well taken.

█ An attorney has the right to answer argument urged by opposing counsel. The first argument complained of was, in effect, an accusation of appellant and its counsel of unfair conduct. This argument was in answer to an argument by one of appellant's attorneys concerning what was fair in the case and does not constitute reversible error. We also overrule appellant's point urging reversible error because of argument by appellee's attorney, in effect, that certain arguments of appellant's counsel were an effort to "bamboozle" the jury or to "pull the wool" over their eyes.

Arguments by appellee's counsel complained of in 3 other points were not objected to at the time and complaint was

made for the first time in appellant's motion for a new trial. These arguments were not flagrant abuses of the limits of proper argument. They were not of such a prejudicial nature that, either individually or as a whole, they were reasonably calculated to cause, or probably did cause the rendition of an improper judgment. No reversible error is shown. Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596.

The judgment of the trial court is affirmed.