TEXAS SAND COMPANY et al., Appellants,

v.

Donald L. SHIELD et al., Appellees.

No. 3772.

Court of Civil Appeals of Texas.

Eastland.

April 5, 1963.

Rehearing Denied April 26, 1963.

Cofer & Cofer, Austin, for appellants.

Snodgrass, Smith, Rose & Finley, San Angelo, for appellees.

COLLINGS, Justice.

This suit was brought by Donald L. Shield, Leona Shield Montgomery, Charles L. South, James W. Dibrell, Josephine Dibrell Jobe, Elizabeth Dibrell, Joseph B. Dibrell, Jr., John F. Petty and James Robert Petty against Texas Sand Company, a corporation, Shield Oil and Gas Company, a corporation, Bridwell Oil Company, Elgean Shield and wife, Flora Shield, Richard Shield and wife, Sylvia Shield, Elgean C. Shield, F. Craig Morton, Otto Reynolds, H. & R. Drilling Company and John Hancock Mutual Life Insurance Company. Plaintiffs sought to set aside two conveyances of a tract of land containing approximately 2,031 acres on the basis of fraud, and to foreclose a judgment lien against the land. The first of the alleged fraudulent conveyances was by Elgean Shield and wife Flora Shield and Shield Oil and Gas Company to Richard Shield executed March 1st, 1954. The second alleged fraudulent conveyance was made by Richard Shield and wife Sylvia Shield to Texas Sand Company, executed March 17, 1954. Plaintiffs claimed to be creditors of Elgean Shield and Shield Oil & Gas Company as evidenced by a judgment of the District Court of Jeff Davis County rendered on July 26, 1954, and abstracted in the Coleman County Judgment Records on September 7, 1954. It was alleged that execution was issued on June 18, 1957, and returned "nulla bona" by the Coleman County Sheriff on June 20, 1959.

Defendants Morton, Reynolds, H. & R. Drilling Company and John Hancock Mutual Life Insurance Company filed disclaimers. The remaining defendants by pleas in abatement and in bar urged their plea of limitation based upon Article 5529, Vernon's Ann.Tex.Civ.St. and Article 5507, V.A.T.C.S. The case was tried before a jury which found that the March 1, 1954 conveyance was given with the intent (1) to hinder, (3) to delay, (5) and to defraud appellees in the collection of their debt. The jury found in answer to special issues 7 and 8 that the parties to the deeds dated March 1, 1954, and March 17, 1954, did not intend that such deeds should be effective as conveyances of the properties therein described, and in answer to special issue number 13 found that such deeds were not based upon a substantial and valuable con-- sideration. The jury found in answer to special issue number 9 that at the time of the execution of the deed dated March 1, 1954, from Flora Shield and Elgean Shield the title of record in the name of Elgean Shield to the land in controversy was not held for the use and benefit of his wife Flora Shield. Special issue number 10 inquired whether Texas Sand Company, together with its successors in title, Elgean C. Shield, Richard Shield, Alan Shield and Flora Shield held peaceable and adverse possession of the 2,031 acre tract of land for three years prior to February 28th, 1959, and such issue was answered in the negative. In answer to special issue number 12 it was found that plaintiffs, after abstracting their judgment, used diligence in obtaining and having issued execution upon the judgment debt involved.

Judgment was rendered on the verdict setting aside both conveyances holding that plaintiffs had a valid judgment lien against the land in question subject to the rights of Bridwell Oil Company and John Hancock Mutual Life Insurance Company, and foreclosing their judgment lien. The defendants filed their motion for a new trial which was overruled and they have appealed.

The evidence shows that prior to 1952, appellees held a claim for money against Elgean Shield and Shield Oil and Gas Company which was reduced to judgment in the District Court of Jeff Davis County on July 26, 1954, and upon appeal it was on October 3, 1956 determined favorably to appellees. This judgment was abstracted in the Coleman County Judgment Records on September 7, 1954, and was duly indexed. The execution entered on the judgment on June 18, 1957, was returned "nulla bona" by the Sheriff of Coleman County.

The evidence further shows that on March 1, 1954, the date upon which notice was given by letter that the case in Fort Davis had been set for trial, Elgean Shield and his wife and Shield Oil and Gas Company conveyed the land in question together with all their other properties, except the homestead, to their son, Richard Shield. The consideration recited in this deed was the "love and affection which we bear toward our son" and the further consideration of the assumption of specified indebtedness. The Texas Sand Company was organized by the Shield family and chartered on February 1, 1954. No stock was issued and the Charter was forfeited by the Secretary of State on September 1, 1956, for non-payment of franchise taxes. On March 17, 1954, Richard Shield and his wife conveyed all the properties covered by the deed dated March 1, 1954, to Texas Sand Company in consideration of the assumption of the same indebtedness. This suit was brought on February 28, 1959, in Coleman County to foreclose appellees' judgment lien on the 2,031 acre tract and the parties to the deeds dated March 1, 1954, and March 17, 1954, were joined as defendants.

■ In appellants' 1st and 2nd points it is contended that the court erred in overruling their plea of limitation and in holding that the 4 year statute, Article 5529, V.A.T.C.S. was not applicable to this suit to set aside a fraudulent conveyance. Ar-

ticle 5529, V.A.T.C.S., provides as follows: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward."

We cannot agree with appellants' contention that the court erred in holding that Article 5529, was not applicable and in overruling appellants' plea of limitation. It is held that a suit to enforce a subsisting judgment lien on land against a grantee in a void fraudulent conveyance is not barred until the grantee thereunder or his assigns acquire full title to the land under some statute of limitations which would bar an action to recover realty. 53 C.J.S. Limitations of Actions § 36, page 988; Eckert v. Wendel, 120 Tex. 618, 40 S.W.2d 796, 76 A.L.R. 855.

The jury found and the evidence shows that the conveyance of March 1, 1954, was fraudulent. It is held that such a conveyance although valid as between the parties is void as to creditors. It was void under the provisions of Articles 3996 and 3997, V.A.T.C.S. Appellees held a claim against Elgean Shield and Shield Oil and Gas Company at the time of such conveyance, which was thereafter reduced to judgment in the District Court of Jeff Davis County. As to such creditors the legal title and equitable title to the property remained in the grantor unaffected by the fraudulent deed. Art. 5529 is therefore not applicable. It is held that a judgment creditor cannot be deprived of his legal right to enforce collection of his judgment against lands of his debtor by a fraudulent conveyance made to hinder, delay and defraud creditors, even though prior to the entry of the judgment and the filing of the abstract of judgment. See Eckert v. Wendel, supra, 40 S.W.2d at page 799. The land, as to such a judgment creditor, is held to be still the property of his debtor, and when the creditor obtains a judgment lien he is entitled to have the land sold to satisfy such judgment lien unless the vendee of the debtor has acquired title by the 3, 5 or 10 year statutes of limitation applicable to real estate.

■ Appellants claimed the land by adverse possession under Articles 5507 and 5508, V.A.T.C.S. The evidence shows without dispute that appellees instituted this suit on February 28, 1959, to set aside the two conveyances in question, which were executed on March 1, 1954 and on March 17, 1954, both of which were filed and recorded in the Coleman County Deed Records on April 5, 1954. We cannot, however, agree with appellants' contention that there was no evidence, or insufficient evidence, to support the finding of the jury that appellants had not shown peaceable and adverse possession of the land for three years prior to February 28, 1959, or that such finding was against the great weight and preponderance of the evidence, and that the court therefore erred in entering judgment for appellees upon the verdict.

Appellants contend that at the time this suit was instituted by appellees, Texas Sand Company held record title from the sovereignty of the soil to the tract of land. The evidence shows that at about the time the law suit in Fort Davis County was ripe for trial Elgean Shield and wife Flora Shield and Shield Oil and Gas Company executed a deed to Richard Shield covering the land. Soon thereafter Richard Shield and wife executed a deed covering the same properties to Texas Sand Company. No further conveyances of the land in question were made. Texas Sand Company was a Texas corporation incorporated by the Shield family on February 2, 1954. The right of Texas Sand Company to do business in Texas was forfeited on July 5, 1955 because of failure to pay the franchise taxes. The Charter of Texas Sand Company was forfeited on September 1, 1956, because of the failure to pay franchise taxes. Mrs. Flora Shield claimed to own Texas Sand Company. Proof of final payment of the capital stock of Texas Sand Company was filed with the Texas Secretary of State's office

on July 16, 1956. The proof of final payment showed Richard Shield to own six shares, Elgean C. Shield to own six shares and Floria Shield to own thirteen shares. No stock was paid for in cash and no stock was ever issued. Mrs. Flora Shield further claimed to have owned and held the land in question as her separate property since 1938; that from 1938 up until Texas Sand Company took possession in 1954, she personally had possession of and used the land; that she ran cattle on it and leased it; that her use of the land was continual and that it was enclosed with a fence; that after Texas Sand Company ceased to pay its franchise tax in 1956 and up until the date of the trial she continued to use and manage the land as she had before.

The evidence showed that in 1937, the 2,031 acres and an additional 500 acres were owned by inheritance in undivided interests by Elgean Shield, I. O. Shield, Leon Shield, Camille Wallace and Shield Brown. Such land was under a deed of trust held by Kansas City Life and the interest of Leon Shield was subject to a second deed of trust in favor of Coleman National Bank. The notes to both mortgagors were in default in 1937 and Elgean Shield and I. O. Shield conveyed their interest to Flora Shield. During 1938, the First Coleman National Bank acquired the deed of trust of Kansas City Life and on foreclosure took a trustee's deed which was ratified by all the parties including Elgean and Flora Shield. First Coleman National Bank thereupon conveyed the property to Elgean Shield and he conveyed an undivided interest of 19⁄20ths to Camille Wallace. Upon the settlement of a partition suit in 1950, Camille Wallace conveyed to Elgean Shield all her interest in the 2,031 acres and he and Flora Shield conveyed to Camille Wallace all their interest in the additional 500 acres. In 1947, Elgean and Flora Shield executed a deed of trust to Ortin Associates covering the 2,031 acres. In 1949, this deed of trust was foreclosed and the land was conveyed by trustee's deed to Shield Oil and Gas Company. In 1950 Shield Oil and Gas Company conveyed the land to Elgean Shield which concerning the consideration recited, "out of his sole and separate estate." There is no showing of any other conveyance of the land until March 1, 1954, when Elgean Shield and wife executed the deed to Richard Shield. Then on March 17, 1954, Richard Shield and wife executed the final deed to Texas Sand Company.

Article 5507, supra, applies to persons who have been in peaceable and adverse possession of land under title or color of title. It is held that this Article does not protect one who does not deraign title from the State. Haring v. Shelton, 103 Tex. 10, 122 S.W. 13. Assuming without deciding that the evidence shows Texas Sand Company to have a record title to the land in question, appellants have still failed to demonstrate a chain of title from the sovereignty of the soil as required in such cases. It is not contended that Texas Sand Company had peaceable and adverse possession for the three year statutory period. It is claimed, however, that Mrs. Floria Shield was the owner of Texas Sand Company and that when the charter of Texas Sand Company was forfeited in September of 1956, that the title or color of title shown in such corporation vested in her and thereby extended the possession for the full three years. This contention is not well taken. Although Mrs. Shield claims to succeed Texas Sand Company in ownership of the land it is undisputed that there was no deed executed conveying title to her. Although she claims ownership of all the stock of the company it is undisputed that no stock certificates or other instruments of ownership in the corporation were ever issued. Mr. Elgean C. Shield testified that he didn't know of any stock being issued to show who owned the corporation, and that although he was the last president of the company, he did not know who owned it. Mrs. Flora Shield also testified that no stock certificates were ever issued by Texas Sand Company and that she did not have any written agreement or anything in writing showing that she was the owner of stock,

in said company. Only Mrs. Floria Shield claimed to have possession of the land from the time. of the demise of the Texas Sand Company until the time of the bringing of this suit but she is unable to meet the requirements of the statute because the evidence fails to show that her claim was under title or color of title. The court did not err in rendering judgment based upon the jury's negative answer to the inquiry in special issue number 10 concerning peaceable and adverse possession of the land by Texas Sand Company and its successors.

■ Appellants' 5th point complains of the action of the court in holding that appellees' judgment lien was valid. Appellants contend that the abstract and judgment were not properly recorded and indexed under the statutes of this state, and were therefore not effective to establish a lien. Concerning the duties of the clerk in indexing abstracts of judgment, Article 5448, V.A.T.C.S., provides:

> "He shall at the same time enter it (the judgment) upon the alphabetical index to such judgment record, showing the name of each plaintiff and of each defendant in the judgment, and the number of the page of the book upon which the abstract is recorded."

In essence appellants' complaint is that each of the defendants are not listed in the direct index under the letter under which each plaintiff is indexed and that each of the plaintiffs are not listed in the indirect index under the letter where the defendants are listed. In support of their contention appellants rely upon J. M. Radford Grocery Company v. Speck, Tex.Civ.App., 152 S.W. 2d 787, (writ refused). That case does not support appellants' contention. It simply holds that the provision of the statute relating to entering abstract upon alphabetical index to the judgment record showing the name of each plaintiff and defendant in the judgment and the number of page of book upon which the abstract is recorded is mandatory and must be followed to establish a judgment lien. In that case the evi-

dence did not show that the abstract of judgment was alphabetically indexed in the judgment records. The record showed only that the abstract was indexed but does not affirmatively show that the names of all the parties to the judgment appear alphabetically in the index direct and indirect. In the judgment here under consideration there were twelve plaintiffs and two defendants and the judgment was indexed in the index to the abstract of judgment records of Coleman County alphabetically as to each of such plaintiffs and defendants. As an illustration, in the direct index the judgment was indexed as to the plaintiff Donald L. Shield under the letter "S" as "Donald L. Shield et al, plaintiff, Elgean Shield et al, defendant." In the indirect index the judgment was indexed as to the defendant Elgean Shield under the letter "S" as Elgean Shield, et al, defendant, Donald L. Shield, et al, plaintiff. In similar manner the judgment was properly indexed alphabetically as to each of such plaintiffs and defendants, so that any person searching the alphabetical index under the name of any party plaintiff or defendant would be able to find the judgment and ascertain with promptness and certainty whether or not a lien existed. This is all that is required by the statute as indicated in Womack v. Paris Grocer Co., Tex.Civ.App., 166 S.W.2d 366, writ refused 140 Tex. 423, 168 S.W.2d 645. In that case the court stated as follows:

> "In construing said Article 5448, our courts have uniformly held that the object of the statute is not to encumber the registry with full information of the abstract lien, since that may be obtained from the judgment lien itself after it has been located by consulting the index, and that the index is designed merely to indicate the source from which the full information may be obtained."

■ It is contended in appellants' 7th point that there is no evidence to support the finding of the jury in answer to special issues numbers 1, 3, and 5 to the effect that the conveyance dated March 1, 1954, was

given with the intention to hinder, delay and defraud appellees in the collection of their debt, and contend in the alternative that such answers are against the overwhelming weight and preponderance of the evidence, and that the court therefore erred in rendering judgment thereon. We cannot agree with this contention. The conveyance of the 2,031 acre tract of land from Elgean Shield et al. to Richard Shield was made just prior to the trial of the case in Ft. Davis in which appellees were seeking a money judgment against Elgean Shield. This conveyance purported to convey not only the land in question but all other real estate and mineral interests owned by Elgean Shield except his homestead. The grantee, Richard Shield, was at the time a college student. The recited consideration was "the sum of Ten Dollars ($10.00) and other good and valuable considerations to us—paid by Richard Shield—and the love and affection which we bear toward our son" and the further consideration of the assumption of a stated indebtedness in the amount of approximately $92,000.00. Such indebtedness purported to include $38,000.00 which the deed recited was owing to Flora J. Shield as evidenced by a promissory note executed by Elgean Shield on October 1, 1953. The $38,000.00 indebtedness was supposed to represent amounts which Mrs. Flora Shield had advanced from separate funds, but no such written note was shown. The evidence also supports the conclusion that all of the income of Elgean Shield and wife, Flora Shield, had been comingled over the years without regard to source or use. It was not demonstrated what amounts, if any, were Mrs. Shield's separate property. The lands in question were then conveyed by Richard Shield to Texas Sand Company which had no assets prior to such conveyance and which assumed the obligations which Richard Shield had assumed. The evidence indicated that the 2,031 acre tract was worth at least $52.-00 per acre in 1954 and that the royalties and minerals covered by the deed were valued at approximately $55,000.00. It is also to be noted that the jury found in answer to special issues numbers 13 and 14 that the deeds of March 1, 1954, and March 17, 1954, were not based upon a substantial and valuable consideration and that the property described in such deeds had more value than was reasonably sufficient to pay all just debts, the payment of which was assumed in said deeds. The evidence in our opinion supports the finding of the jury that such conveyances were given with the intent to hinder, delay and to defraud appellees in the collection of their debt.

The evidence in our opinion also supports the findings that the parties to the deeds of March 1, 1954, and March 17, 1954, did not intend such instruments to be effective as conveyances of the property described therein, and such findings are not against the great weight and preponderance of the evidence. Appellants themselves claim that Richard Shield was only a conduit in order to place the property in Texas Sand Company. No stock was ever issued in Texas Sand Company. All the monies of the corporation were used by the Shield family and mixed with other family funds without regard to source of income or use. The only corporation records in existence were minutes of the first meeting of incorporators and minutes of a meeting to authorize the execution of an oil and gas lease. In less than eighteen months after the corporation was organized, its right to do business in Texas was forfeited for failure to pay franchise taxes, and in less than two years its charter was forfeited for the same reason.

Special issue number 9 inquired whether at the time of the execution of the deed from Elgean Shield and Flora Shield and Shield Oil & Gas Company dated March 1, 1954, the record title in the name of Elgean Shield to the 2,031 acre tract was held for the use and benefit of his wife Flora Shield. The jury answered this question in the negative. Appellants urge in their tenth point that the court erred in holding that appellees had a valid judgment lien on the land because, according to their

contention, the evidence shows conclusively that such land was the separate property of Mrs. Shield and that the title which stood in the name of Elgean Shield prior to March 1, 1954, was mere legal title which he held under a resulting trust as the separate property of Mrs. Shield. Appellants urge that the undisputed evidence shows that as of November 1, 1937, Flora Shield owned the entire 2,031 acre tract by virtue of conveyance from her husband and other owners of undivided interest in the land at that time.

The evidence shows that the status of the property in 1937 was that by inheritance Elgean Shield owned a 9/25ths interest, I. O. Shield owned a 9/25ths interest, Camille Wallace owned a 9/25ths interest, Leon Shield owned a 9/25ths interest and Shield Brown owned a 1/25th interest. These owners had executed certain mortgages and deeds of trust on the land and the notes secured thereby were in default in 1937. The evidence shows that Mrs. Flora Shield knew of these mortgages and knew that the notes were delinquent and it was under these circumstances that the deeds were executed which Mrs. Shield relies upon as a basis for her claim that the land is her separate property. Thereafter the above described mortgages and deeds of trust were foreclosed and a trustee's deed was executed to The First Coleman National Bank in 1938. A ratification deed was thereupon executed and delivered to The First Coleman National Bank by all of the parties, including Mrs. Flora Shield, and this ratification contained a warranty of title. In 1938 the land was conveyed by The First Coleman National Bank to Elgean Shield. In 1947 Elgean Shield and Flora Shield executed a deed of trust on their interest in the 2,031 acre tract to Ortin Associates securing the payment of certain notes. In 1949 this deed of trust was foreclosed and the property was conveyed by trustee's deed to Shield Oil & Gas Company. In 1950 Shield Oil & Gas Company conveyed the tract to Elgean Shield by a deed reciting as follows: "unto the said Elgean Shield

out of his sole and separate estate." Appellants contend that the deed from Elgean Shield to his wife in 1937 was a warranty deed, and that the conveyance to him from The First Coleman National Bank in 1938 was an after-acquired title. Appellants urge that there was no change in title, except as to indebtedness, in which Flora Shield was a party until the execution of the deed by Flora Shield and Elgean Shield to their son Richard Shield dated March 1, 1954.

We cannot agree with appellants' contention in this respect. In the first place the conveyances to Flora Shield in 1937 conveyed the "right, title and interest as it appears" in the property and the evidence shows that the right, title and interest of each of the grantors was subject to mortgages and deeds of trust, the existence of which was well known by Mrs. Shield. These mortgages were foreclosed and thereby Mrs. Shield's separate interest in the land was also foreclosed and lost. Mrs. Shield joined as a party in a ratification of the trustee's deed to the bank, which contained a warranty of title. This of itself would effectively dispose of any claim of after-acquired title which might otherwise have accrued to Mrs. Shield. In addition to all this the transactions, as above set out, in 1947, 1949 and 1950 also effectively defeated any title which she might have had in the land. Beyond any question the evidence is not undisputed that the land was the separate property of Mrs. Shield at the time of the deed of March 1, 1954. Appellants' tenth point is overruled.

■ As heretofore noted appellees obtained the Fort Davis judgment on July 26, 1954. An appeal of the case was disposed of in favor of appellees on October 3, 1956. There was no supersedeas bond and execution was entered on the judgment on June 18, 1957. Appellants contend in their 6th point that the record shows that appellees failed to use diligence in obtaining and having issued execution upon their judgment debt and thereby lost their lien. They urge that the finding of the jury to the

effect that appellees did use diligence in obtaining and having issued execution upon the judgment is not supported by any evidence and that in any event the evidence is not sufficient to support such finding. They urge that the court therefore erred in rendering judgment for appellees. We cannot agree with appellants' contention. Article 5449, which provides for the fixing of a lien by recording and indexing a judgment, does not provide any time limit for the issuance of execution. Under such Article the recording and indexing of a judgment operates as a lien upon all the real estate of the defendant situated in the county where such record and index are made and it is provided that such lien shall continue for ten years from the date of such record and index unless the judgment becomes dormant. There is no showing that the judgment became dormant.

We also overrule appellants' point urging that it was reversible error for the court to overrule their motion for a mistrial because of inflammatory and prejudicial reference to Billie Sol Estes by counsel for appellees during argument to the jury. The argument complained of by appellants is as follows:

"MR. SMITH: Now, let's see what right we have to expect from some of the other parties in the case. First, we can expect this: We can expect the testimony of the defendants to come from professional litigants. Mr. Cofer says that you can look through all these and you don't see Elgean and Flora Shield bringing suits. Mr. Cofer, I say to you that today I don't see your client Billie Sol Estes bringing a suit against anybody either."

Counsel for appellants immediately objected to the above argument and made a motion for mistrial. The court sustained the objection to the argument and instructed the jury to disregard and not consider it, but overruled appellants' motion for a mistrial. The argument was improper but the court instructed the jury not to consider it. Appellees also contend that even though the argument was improper it was invited by improper arguments of appellants' counsel; that the court instructed the jury to disregard it and it has not been demonstrated that the argument probably resulted in an improper verdict.

Counsel for appellants had argued to the jury, in effect, that the interest of appellees' lawyers in the case was responsible for the bringing of the suit and that otherwise there would have been no suit. They stated, that the fees were "pretty good pay for lawyers." They also stated in effect that although Elgean Shield had paid thousands of dollars for some members of the family that he had never brought any suit against them. In this connection counsel for appellant made the following argument to the jury:

"You can go through that pile of abstracts and you will find not a single suit where Elgean Shield sued them; and yet he has been battered in and out of court, regardless of his health, by these lawyers to collect the fifty percent interest they have in this judgment and in the other property of the Shield estate."

Under the circumstances in evidence we are of the opinion that the argument by counsel for appellees, although improper, is not such that the action of the court in refusing to declare a mistrial would constitute reversible error. It was invited by improper argument by counsel for appellants and the court properly instructed the jury not to consider it. The jury must be presumed to have obeyed the court's instruction. Walker v. Texas Employers' Ins. Ass'n, 155 Tex. 617, 291 S.W.2d 298. It does not clearly appear that the argument complained of probably caused the jury to return a different verdict than it would have returned if the improper argument had not been made.

The judgment is affirmed.