George J. MAGALINE, Appellant,

v.

J. V. HARRISON TRUCK LINES, INC., et al., Appellees.

No. 259.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Oct. 15, 1969.

Rehearing Denied Nov. 19, 1969.

Michael A. Moriarty, S. M. Helm, Helm, Jones & Pletcher, Houston, for appellant.

Harry L. Tindall, Charles M. Haden, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellees.

SAM D. JOHNSON, Justice.

The plaintiff, George J. Magaline, brought this suit for injuries which he allegedly sustained as a result of a car truck collision on December 7, 1967. On this date and in the general location of the collision, 17 cars and trucks were involved in a series of accidents. The defendants, J. V. Harrison Truck Lines, Inc., and Wiley Burton, were, respectively, the owner and the driver of the truck which allegedly struck the automobile occupied by the plaintiff.

In substance, the jury found that the plaintiff, George J. Magaline, was not in his automobile at the time when it was struck by the Harrison truck. As a result of this determination the other special issues concerning conduct of the plaintiff driver, defendant driver, and monetary damages were not answered by the jury. The trial court entered judgment that the plaintiff take

nothing by his suit against the defendants. Plaintiff duly perfects his appeal to this Court.

The record reflects a sharp conflict in the testimony on whether or not the plaintiff was in his automobile at the time it was struck by the defendant truck. Much of counsel's jury argument focused on this subject, and it was the subject matter of the first special issue. It is such jury argument of defendant's counsel that gives rise to the instant appeal.

The essence of plaintiff's testimony is as follows: That he was traveling east in the left lane of Interstate Highway No. 10, driving a white Chevrolet automobile on the morning of the collision. It was wet and foggy. He had just crossed the Trinity River bridge when he entered a thick fog bank. As he slowed his automobile he discovered that the entire east roadway and shoulder of Interstate 10 was blocked for traffic traveling east. As he came to a stop he saw the headlights from a truck bearing down on him from behind. His automobile was almost immediately thereupon struck from the rear with great force by the large trailer type truck that was behind him. As he got out of his car he called a man to help him. He testified that the man who responded to his call and who then carried him to the shoulder of the highway was the person later identified to him as the defendant, Wiley Burton, the driver of the defendant J. V. Harrison truck.

Wiley Burton, the driver of the defendant truck and one of the defendants, testified as follows. That he was the driver of the Harrison truck and that on the date in question he, too, was going east on Interstate 10. He crossed the same Trinity River bridge and entered a fog bank. Being then confronted with a truck crossways in the road, he swerved from the right lane to the left lane but found it blocked also. He then pulled further to the left on to the esplanade. Before stopping on the esplanade the truck which he was driving struck a glancing blow to a white Chevrolet automobile. He testified that he glanced in the Chevrolet automobile as he struck it but that he did not see anyone in it.

Sam Hargraves, owner of a garage and wrecker service, who was present at the scene of the collision, was called as a witness by the defendant. He testified that when he first saw the plaintiff's car it was stopped. It was, however, still rocking as if it had just previously hit or been hit by something. It was under these conditions that he immediately thereafter saw the plaintiff's car struck, not by the defendant truck, but by a bob-tail or van type truck. He testified that it was he who then went to the plaintiff's automobile and who personally carried the plaintiff from his automobile to the shoulder of the road. He testified that he did not see the Harrison truck.

The first four points of error brought by plaintiff-appellant allege improper jury argument by defendants' counsel. The initial response made by the defendant is that such jury argument was invited or made in answer to counsel for plaintiff's argument. It is therefore necessary to set forth the pertinent arguments.

As a part of his opening argument, counsel for plaintiff stated "Let's first take the defendants' presentation of this case. They were going to bring this witness and that witness and the law officers and all and they were going to tell you that this was not the defendant that caused this irreparable damage; * * *."

Later, referring to the bob-tail or van type truck, plaintiff's counsel stated, "Because if that truck had had anything to do with it, they would have had that truck practically out there on the courthouse green and everybody that knew anything about it up here swearing their heads off. And you know it and I know it. And they would have had any officers or anybody else that could have thrown any light on it.

"They told you, 'We are going to do,' such and such. Any they have done nothing, except to confirm and buttress and solidify the supple, (sic) uncontradicted testimony of George Magaline. * * *"

Following the foregoing opening argument by Mr. Helm, plaintiff's counsel, the defendants' counsel made his jury argument. Contained in the following argument by Mr. Haden, the defendants' counsel, is the complained of jury argument:

Mr. Haden: "And anybody who really wanted to know the truth, anybody that really wanted to put on good evidence and not a smoke-screen before you in a lawsuit could go to the public records of the State Highway Patrol or the Deputy Sheriff—these are public records, they can be subpoenaed in court, these officers can be subpoenaed into court—and he could have known the name of that bob-tailed truck; now, he would have you believe that if you do what justice requires in this case and core (sic) him out and say to J. V. Harrison and Wilie Burton are not liable for this accident that George Magaline mistakingly told you about that never happened, that he is true. (Sic) Well, I can tell you one thing, this just isn't so, because he can sue that bob-tail truck or anybody—"

Mr. Helm: "I object to the argument, this man knows who hit him and so testified to it and now counsel takes the position that after this jury passes on this case I can go sue everybody out there. That is false and I object to it and ask the Judge to so instruck that jury."

Mr. Haden: "I didn't say he could sue 'everybody,' I said he could sue the bob-tail truck or anybody. I mentioned or the bob-tail truck, which was mentioned in evidence in this case."

The Court: "Ladies and Gentlemen, you will remember the evidence and remember what he stated and if he did say that he could sue anybody up there I sustain the objection. If he said only the bob-tail truck, you may proceed with your argument. Overruled."

Mr. Haden: "He can go sue that bob-tail truck anytime he gets ready from this day until next December. He has a whole year to do it. There is a two-year Statute of Limitation in this State on personal injury accidents and he has got a whole year to go after that bob-tail truck. And he can subpoena every record in Joe Harland's office or the Sheriff's office or anybody else's office, including my office, and get all the information about that bob-tail truck he wants. It was very definitely a bob-tail truck that had the wheels knocked out from under it and if you don't think that is spread all over the records of these Investigating Officers who investigated this case, some ten or twelve, or however many men were out there, it's there. And it's there for anybody who wants to look at it. And Mr. Helm knows what is in those records. Joe Harland's deposition was taken up in his office and he examined him for some sixty-three pages of his testimony and I—"

Mr. Helm: "Just a moment. You have not offered that deposition in evidence or any line of it and I object to it."

The Court: "Sustained. There is nothing in this record as to any of Joe Harland's testimony or anything in the record of the Highway Patrolman and, Ladies and Gentlemen, you will not consider that for any purpose in this case."

Mr. Helm: "Your Honor, I object further to counsel purposely getting out of the record on this highly prejudicial and untruthful argument that he is making and I want the Court to give the plaintiff in this case some protection. I can't give it to him, I confess. I am not able to protect the plaintiff in this case."

The Court: "I instruct the jury and I instruct you again, Ladies and Gentlemen, that you will not consider that portion of the argument for any purpose, because there is nothing in the record that the Court recalls of any

records of any Highway Patrol or any deposition of the Highway Patrolman being taken at any time and they would certainly be available to both parties, if they were, and it is a violation, of course, of the rules of argument; so his objection is sustained and you will not consider it for any purpose."

Mr. Helm: "One more objection, I don't want to interrupt him any more and don't want to take away from his time, but—and I think he should be given an additional time for this interruption—but he is obviously by this vicious argument trying to mistrial this case and I do want the Court's protection."

The Court: "It has been sustained and I think I have given sufficient instructions. You may proceed, Mr. Haden."

Mr. Haden: "I would like to object to Mr. Helm's side-bar remarks casting reflection upon my integrity and, also, casting reflection upon this Court and saying that I am trying to mistrial this case by a vicious argument, which I am doing nothing more than trying to adequately review the evidence and see that this jury isn't hood-winked into letting him smoke-screen them"

Mr. Helm: "And further objection that he is adding fire, fuel to the fire."

The Court: "Sustained on your objection, Mr. Haden, and I sustain your objection, Mr. Helm, and let's not have any more side-bar remarks. Continue with your argument, would you please."

Mr. Haden: "May we have the jury instructed not to consider his uncalled for side-bar remarks?"

The Court: "I instruct you, Ladies and Gentlemen not to consider Mr. Helm's uncalled for side-bar remarks and, also, I instruct you not to consider Mr. Haden's uncalled for continued argument on the basis that was a shade of—that I instructed you not to consider a while

ago. And you may proceed, Mr. Haden."

Mr. Haden: "Thank you, Your Honor."

Mr. Haden: "Well, they really holler when you hurt them, don't they?"

The Court: "Now, Mr. Haden, that was an uncalled for remark and I have already instructed both of you to refrain from any side-bar remarks and I think that is getting into the same thing I have instructed the jury on so let's stay within the record and argue the evidence and go ahead with the case."

■ From the record it is apparent that the trial judge considered counsel for the defendant to be outside the record in much of his jury argument. The attempt of the court to confine counsel to the record is likewise apparent. While recognizing the great latitude allowed counsel in discussing facts and issues, " * * * such latitude extends only to the facts and issues raised by the evidence in the case." Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054 (1940).

■ While outside the record counsel for the defendant emphasized plaintiffs' failure to produce numerous witnesses (State Highway Patrol, deputy sheriff, investigating officers—some ten or twelve, Joe Harland). The instant record contains no indication that any of these uncalled witnesses had any relationship with the plaintiff which would normally predispose them to favor him. This being true counsel's comment on the failure to produce such witness, equally available to both parties, is improper. Sanders v. St. Paul Fire & Marine Ins. Co., Tex.Civ.App., 429 S.W.2d 516, writ ref., n.r.e. The real emphasis of counsel's argument, however, goes beyond mere impropriety, for it was that the plaintiff, in failing to call these individuals as witnesses and in failing to subpoena their records, was keeping the truth from the jury.

Counsel's argument does not stop at comment on the failure to produce witnesses

equally available to both parties and the emphasis to be obtained therefrom, however. We believe that the thrust of counsel's argument was to tell the jury what testimony these witnesses would give and to tell the jury what the records of these uncalled witnesses contained (including, altogether erroneously, those of counsel for the defendant). Counsel stated, in speaking of the evidence and testimony available that the bob-tail truck caused the accident, " * * * and if you don't think that is spread all over the records of these Investigating Officers who investigated this case, some ten or twelve, or however many men were out there, it's there. And it's there for anybody who wants to look at it." This comment pertaining to the testimony and records of unsworn witnesses is not upon an obscure matter, it is upon the critical point in issue. Such argument falls within the prohibition spoken of in Tex-Jersey Oil Corporation v. Beck, 157 Tex. 541, 305 S.W.2d 162, 167, 68 A.L.R.2d 1062, "Counsel may /not/ undertake to tell the jury what testimony the witness would give. That would clearly be improper as getting unsworn testimony before the jury." We believe that counsel's argument has improperly submitted the substance of unsworn testimony of numerous witnesses on the most critical point in issue to the jury.

The foregoing jury argument, bearing as it does upon the vital point in issue, could only be more harmful by counsel's proceeding to state, as he did, that there was still time within the Statute of Limitations for plaintiff to sue someone else (obviously the driver and/or owner of the bob-tail truck) whose identity was known by the uncalled witness, the officers and even defense counsel himself. Such argument must be deemed harmfully prejudicial under the record in this case.

■ In defense of the complained of jury argument it is argued that plaintiff made timely objection thereto which was sustained. Further, that in each instance the trial court gave appropriate instructions to disregard and that it must be presumed that the jury complied. Walker v. Texas Employers' Ins. Ass'n, 155 Tex. 617, 291 S.W.2d 298 (1956); Texas Sand Co. v. Shield, Tex.Civ.App., 367 S.W.2d 88, affirmed at 381 S.W.2d 48. Bearing in mind the references outside the record and the very prejudicial nature of the argument on the critical point in issue, we believe the rule applicable here is stated in Texas Employers' Ins. Ass'n v. Drayton, Tex.Civ. App., 173 S.W.2d 782, 788, ref., w.m., "We recognize the rule that counsel for parties have the right to discuss the evidence and draw their own conclusions, deductions, and inferences therefrom and, in doing so, if they stay within the record, even if the inferences thus drawn are erroneous, it is not such error as may not be cured by instructions; but where the inference is unsupported by the record, clearly unjustified, prejudicial, inflammatory, and of a repeated and consistent nature, as in this case, we think it constitutes reversible error regardless of the instructions of the trial court."

■ Defendant further contends that the complained of arguments were invited and made in response "to comments made by appellants in both opening and closing arguments." It must be first noted that defendants' arguments could not be *responsive* to plaintiff's *closing* argument. The defendant could not be responding to that which might be *later* stated. Secondly, the initial reference to the calling of an officer was made not by counsel for the plaintiff but by counsel for the defendant in his voir dire examination of the jury panel. He inquired, "Do any of you know a Highway Patrolman, Joe Harlan, who lives in your community, or have you ever heard of him? He will be a witness in this case." This cannot be construed other than as a statement that such officer would be called by defendant's counsel. He was not called. It was in the light of this statement and the failure of defendant's counsel to call such witness, that counsel for the plaintiff subsequently stated in his closing jury argument, "They were going to bring this witness and that witness and the law of-

ficers and all. * * *" Rather than an invitation this was a response by plaintiff's counsel.

In support of his contention that the argument was invited defendant cites Travelers Ins. Co. v. Pierce, Tex.Civ.App., 358 S.W.2d 947, no writ hist.; Word v. United States Coffee & Tea Co., Tex.Civ.App., 324 S.W.2d 258, writ ref., n.r.e., and Dyer v. Hardin, Tex.Civ.App., 323 S.W.2d 119, writ ref., n.r.e. These cases affirm the right to fairly respond to argument by opposing counsel, that a fair response to opposing counsel's argument presents no error, and that what constitutes inflammatory and prejudicial argument depends on the facts and previous arguments with these principles.

We believe that a fair reading of plaintiff's argument indicates that it was in substantial measure a response itself, rather than an invitation. In any event, it cannot be said to call for or justify the response given. Plaintiff's quoted arguments were not objected to and were apparently within the record. Such words cannot fairly be construed to be an invitation to go outside the record, an invitation to comment on the failure to produce testimony and records which, if available at all, were equally available to both parties, and they are not an invitation to give the purported substance of uncalled witnesses' testimony. We hold that plaintiff-appellant's 1st, 2nd and 3rd points represent reversible error under the record.

■ The 4th point of error complains of counsel for the defendant, in apparent disregard of the court's admonition, stating, "Well, they really holler when you hurt them, don't they?" This would not, in itself, contain reversible error, but by this 5th point of error plaintiff contends that the cumulative effect of the argument complained of constitutes reversible error. This contention is sustained as we believe the arguments complained of in points 1 through 5 were each improper. The ag-

gregate and cumulative effect when considered in the light of the whole record, were in law reasonably calculated to cause and probably did cause the rendition of an improper judgment. Southern Pacific Co. v. Hubbard, 156 Tex. 525, 297 S.W.2d 120 (1956); State v. Jauernig, Tex.Civ.App., 395 S.W.2d 923, writ ref., n.r.e.

■ Appellant's final point of error is that, "The Trial Court erred in not enforcing the terms of the stipulation entered into between the parties before the Court." The stipulation referred to apparently related to what evidence, if any, was to be offered and admitted involving some alleged prior accident and injury. The stipulation in question was made in chambers before the trial judge, however. It is not in the record. It was not made in open court, it was not in writing, it was not signed, and it was not filed with the papers as part of the record. Each of these are requirements set forth in Rule 11, Texas Rules of Civil Procedure, which was formulated to obviate this very type of situation.

The record reflects that throughout much of the trial the import of counsel's oral stipulation before the court was in issue. The trial court was called on to recall and decide between counsel as to its terms and as to what counsel intended. Judge Norvell, then on the San Antonio Court of Civil Appeals, spoke to this type of situation, "* * * (A). trial judge should not be called upon to decide disputes which arise among attorneys who are practicing before his court. Except where absolutely essential to preserve the rights of one of the parties, an attorney should not require a judge to pass upon the issue of his credibility." Cantu v. Cantu, 253 S.W.2d 957, (Tex.Civ.App., 1952), no writ hist. He who would enforce a stipulation must show it. This has not been done. Appellant's point of error in this respect is overruled.

The judgment of the trial court is reversed and the cause is remanded for a new trial.