GARRETT NEAGLE, as Administrator of the Estate of GARRETT
NEAGLE, JR., Deceased, Respondent, *v.* THE SYRACUSE,
BINGHAMTON AND NEW YORK RAILROAD COMPANY, Appel-
lant, Impleaded with Another.

1. NEGLIGENCE — DERAILMENT OF LOCOMOTIVE CAUSED BY ICE ON
RAILROAD TRACK. Where a locomotive, pushing a snow plow, for the
purpose of removing snow from a railroad track, was derailed and over-
turned by ice formed between the rails, thereby causing the death of a
fireman employed upon the locomotive, a judgment against the company
for causing such death cannot be sustained upon the ground that it was
the duty of the company to furnish its servants with a reasonably safe
place to work, and that it was for the jury to determine whether the ice
rendered the tracks and the road of the defendant unsafe, and whether
the defendant was negligent in allowing them to remain in that condition;
the real question at issue is not whether the defendant was negligent in
failing to furnish a safe place for its servants to work, but whether it was
negligent in the conduct of the work of removing snow from its tracks.

2. SAME — FACTS REVIEWED AND HELD INSUFFICIENT TO SUSTAIN VER-
DICT THAT COMPANY WAS NEGLIGENT IN WORK OF REMOVING SNOW
FROM TRACKS. Where the evidence in such case shows that it is the ordi-
nary practice of railroads, when the fall of snow is very light, to run a
flanger over the road to remove the snow that adheres to the rails, and
when the fall is heavier to use a snow plow, followed by a flanger, and
where there is ice in switches or frogs or between the boards and rails at
crossings and similar places, to remove it by picks, but between stations
and in the open country to run the snow plow over the track whether the
rails are covered with ice or not; and it also appears that ice is not likely
to accumulate on a track which is in use and over which trains pass and
there is uncontradicted evidence showing that at least one train safely
passed over the track shortly before the fall of the snow which plaintiff's
intestate was engaged in removing and during the time when the plain-
tiff contends that patches of ice should have been seen by the track-
walker, and there is no evidence that the defendant had any knowledge
that there was ice on the tracks, it cannot be held that the defendant was
negligent in the manner in which it conducted the work. Assuming that
the presence of the ice was known to the trackwalker and that he failed
in his duty to point it out to the employees, working on the locomotive
and snow plow, his negligence was that of a fellow-servant and cannot
be imputed to the company.

*Neagle* v. *Syracuse, B. & N. Y. R. R. Co.*, 109 App. Div. 339, reversed.

(Argued May 4, 1906; decided May 25, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 22, 1905, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William S. Jenney* for appellant.   Plaintiff failed to show that the defendant, in the exercise of reasonable care, was negligent in permitting the snow plow and engines upon which plaintiff's intestate was employed to be moved over the track at the time of the accident. (*Kirby* v. *D. & H. C. Co.,* 20 App. Div. 473 ; *Hayden* v. *B. E. R. R. Co.,* 44 N. Y. S. R. 377 ; *Kenneson* v. *U. E. S. Ry. Co.,* 168 Mass. 1.)   Plaintiff's intestate assumed the risk of accident from the conditions of snow and ice as one of the risks incidental to his employment. (*Derr* v. *L. V. R. R. Co.,* 158 Penn. St. 365 ; *Bryant* v. *B., C. R. & N. R. R. Co.,* 66 Iowa, 305 ; *Racine* v. *N. Y. C. & H. R. R. R. Co.,* 70 Hun, 453 ; *Howland* v. *M., L. S. & W. R. R. Co.,* 54 Wis. 226 ; *Steffing* v. *C. & N. R. R. Co.,* 46 Wis. 259 ; *McCosker* v. *L. I. R. R. Co.,* 84 N. Y. 77 ; *C. & O. R. R. Co.* v. *Hennessey,* 96 Fed. Rep. 713 ; *Dowell* v. *B., C. R. & N. R. R. Co.,* 62 Iowa, 629 ; *Brown* v. *C., R. I. & P. R. R. Co.,* 69 Iowa, 161.)

*Frank C. Sargent* for respondent.   Notice to the track-walker of the defendant, its track inspector, of the unfit condition of this track, respecting the ice, in which the rails of the track were buried, is sufficient to charge the defendant with negligence. (*Hoelter* v. *McDonald,* 82 App. Div. 423 ; *Gage* v. *D., L. & W. R. R. Co.,* 14 Hun, 447 ; *Durkin* v. *Sharp,* 88 N. Y. 225.)   The defendant was guilty of negligence which caused the death of plaintiff's intestate. (*Hawley* v. *N. C. R. Co.,* 82 N. Y. 370 ; *True* v. *L. V. R. R. Co.,* 22 App. Div. 588 ; *Hoelter* v. *McDonald,* 82 App. Div. 423 ; *Pidgeon* v. *L. I. R. R. Co.,* 87 Hun, 43 ; *Meehan* v.

*S., B. & N. Y. R. R. Co.*, 73 N. Y. 575 ; *Durkin* v. *Sharp*, 88 N. Y. 225 ; *Gage* v. *D., L. & W. R. R. Co.*, 14 Hun, 446 ; *Graham* v. *Chapman*, 33 N. Y. S. R. 349 ; *Near* v. *D. & H. C. Co.*, 32 Hun, 557 ; 98 N. Y. 663.) Plaintiff's intestate was not injured through a risk which he assumed under his employment with the defendant. (*Hawley* v. *N. C. R. R. Co.*, 82 N. Y. 370 ; *True* v. *L. V. R. R. Co.*, 22 App. Div. 588 ; *Hoelter* v. *McDonald*, 82 App. Div. 423 ; *Meehan* v. *S., B. & N. Y. R. R. Co.*, 73 N. Y. 585 ; *Graham* v. *Chapman*, 33 N. Y. S. R. 349 ; *Gage* v., *D., L. & W. R. R. Co.*, 14 Hun, 446.)

Cullen, Ch. J. This action was brought to recover for the death of the plaintiff's intestate, a fireman in the employ of the defendant, who was killed by the derailment of a locomotive. In February, 1902, the westerly track of defendant's railroad near Cortland Junction had been obstructed for some time by heavy falls of snow. A week or so prior to the accident the defendant had a gang of men shoveling snow from the track. The evidence adduced by the plaintiff tended to show that while the shovelers removed the loose snow, they found at points large patches of ice which were as high as the top of the rails, and that this condition of the track was visible to the trackwalker. A day or two before the accident there was another fall of snow, and on the day of the accident it was attempted to remove this snow by a snow plow propelled by two locomotives. While this train, if it may be so called, was proceeding along the track, the plow and engines were derailed and overturned and the plaintiff's intestate killed. In our opinion there was evidence from which the jury could have found that the presence of the ice between the rails caused the derailment. The defendant's motion, at the close of the evidence, to dismiss the complaint was denied and an exception taken. The cause was submitted to the jury which rendered a verdict for the plaintiff, and the judgment entered on that verdict has been affirmed in the Appellate Division by a divided court.

The cause was tried by the plaintiff, presented to the jury at Trial Term and has been affirmed by the Appellate Division on what we deem a fundamentally erroneous view of the principle of law governing the case; that it was the duty of the master to furnish its servants a reasonably safe place to work, and that the questions in issue in the case were whether the presence of the ice rendered the tracks and road of the defendant unsafe and whether the defendant was negligent in allowing them to remain in that condition. It is conceded that in no other respect than the presence of the ice was there any defect in defendant's road. In this climate a fall of snow during the winter months and the obstruction of railroads thereby to a greater or less extent is of regular occurrence, and the removal of the snow during that season is part of the operation of a railroad. It is unnecessary to consider whether as to train crews engaged in the ordinary transportation of passengers and freight the removal of snow is to be deemed a detail of the single common work of operating the railroad in which they are all engaged. Such was plainly the case as to the plaintiff's intestate, for the very work in which he was engaged was the removal of the snow. Nor can there be any proper differentiation between the snow and the ice which had been formed from the snow. Even if we assume, as the plaintiff's evidence tended to show, that only loose snow could be removed by the plow, the removal of the snow and of the ice formed by it were but separate stages or parts of a single work. In *Murphy* v. *Boston & Albany R. R. Co.* (88 N. Y. 445) the plaintiff's intestate was employed in testing a locomotive which had been sent to the repair shop. During the test the boiler exploded owing to the defective condition of bolts, for which the boilermakers had negligently failed to substitute new ones. It was held that the deceased and the boilermakers were fellow-servants, though a different rule would have obtained had the locomotive been furnished to the trainmen for use on the road. It was said by Judge ANDREWS that the claim that the master was "responsible to each successive employee engaged on the repairs for any neg-

ligence of a co-employee, whose work was prior in point of time, although done in effecting the common purpose in which all were engaged" could not be sustained. Therefore, the real question in this case was not of negligence in failing to furnish a safe place to work but of negligence in the conduct of the work. This distinction is of vital importance because the furnishing of a place to work is a part of the master's duty, and in the discharge of that duty he is responsible for the negligence of any of his employees, while as to the conduct of the work he is responsible only for his own negligence or that of his *alter ego*, not for the negligence of a co-servant. (*Loughlin* v. *State of N. Y.*, 105 N. Y. 159; *Webber* v. *Piper*, 109 id. 496; *Cregan* v. *Marston*, 126 id. 568.) This rule has been somewhat modified by the Employers' Liability Act, but that statute was enacted subsequent to the accident before us.

We are unable to see that any personal negligence of the master in the conduct of the work was established by the evidence. The testimony of the plaintiff tends to show that where the fall of snow is very light the ordinary practice is to run a flanger over the road so as to remove snow that adheres to the sides of the rails. Where the fall is heavier a snow plow is first used, the flanger follows. At times and in places the snow on the track may be too deep for a snow plow to go through it. Then the snow, at least in part, must be removed by shovels. It also appears that the ordinary custom is to remove ice by picks from switches or frogs at stations, between the boards and rails at highway crossings, and at special places, such as near water tanks, where it is apt to accumulate from the drippings from the tank. Between stations and in what may be termed the open country the universal practice is to run the snow plow over the track. According to some witnesses of the plaintiff, when notice was given that at some particular point there was a large bed of ice the plow would be there stopped and the ice removed by hand. One witness testified that they relied on the track-walker to point out to them any such beds of ice. The testimony of such a practice is very unsatisfactory, the wit-

nesse's conceding that as a matter of fact snow plows are run over rails covered with ice, and that ice is not likely to accumulate on a track which is in use and over which trains pass. There is uncontradicted evidence to show that at least one train safely passed over the track shortly before the fall of the snow which plaintiff's intestate was engaged in removing, and during the time when the plaintiff contends that the patches of ice should have been seen by the trackwalker. Under this proof we think that negligence could not be predicated of the manner in which the defendant conducted its operations.

Moreover, if it should be assumed that the evidence warranted a finding that running the plow over the track without stopping to remove impacted ice was negligence, there is no evidence that the defendant knew of such a condition. The trackwalker denied that there was any such situation, but the plaintiff contends that it existed, that the trackwalker should have known the fact, and that his knowledge or neglect in failing to know was imputable to the company. We think not. Doubtless, so far as inspecting the track, the roadbed, and whatever was appurtenant to the permanent way, he was discharging the duty of the master. His knowledge was that of the master and his neglect was that of the master. Such also would have been the case if a landslide had obstructed the track. The obstruction here, however, was of a very different character. It was one which was known to all parties, of common and natural occurrence, and the plaintiff's intestate with others was engaged in removing it. If we assume that it was the trackwalker's duty to have pointed out particular places at which the snow plow should have been halted and the ice removed by hand, that, in our opinion, was not part of the master's duty to see to a safe roadway, but a detail of the work of removing the snow, and the negligence of the trackwalker was that of a fellow-servant. In *Brick* v. *Rochester, N. Y. & P. R. R. Co.* (98 N. Y. 211), an employee, engaged in the repair of a dilapidated railroad, riding on the construction train, was killed by

the derailment of the cars. The foreman was charged with the duty of seeing that the crossings were safe. Frozen mud and ice at a crossing derailed the train. It was held that the negligence of the foreman in this work was the negligence of a fellow-servant. The same principle controls the present case. That case differs from the present one in detail and circumstance but not in principle. The duty of the trackwalker in this case to point out the ice to be removed was of the same character as that of the foreman in the other case, that is to say, a duty as to a detail of the work.

The judgment should be reversed and new trial granted, costs to abide the event.

O'BRIEN, HAIGHT, VANN, WERNER and WILLARD BARTLETT, JJ., concur; HISCOCK, J., not sitting.

Judgment reversed, etc.