the Bronx. The total cost of the proceeding, confirmed by the order appealed from, is $66,125.98, of which 13 per cent. or $8,596.38 is assessed upon and borne by the city of New York pursuant to a resolution adopted by the board of estimate and apportionment. The area of assessment was fixed by said board of estimate and apportionment, and embraces many lots, some in the borough of Manhattan and some in the borough of the Bronx, besides those owned by the respondents in this proceeding. Section 980 of the Greater New York charter (Laws 1901, c. 466) provides that:

"The commissioner of assessment shall in making his estimate and assessment of the value of the benefit and advantage of the said improvement, assess any and all of such lands, tenements, hereditaments and premises within the area of assessment fixed and prescribed by the board of estimate and apportionment, as the area of assessment for benefit, in proportion to the amount of benefit received."

The problem presented to the commissioner of assessment therefore was to distribute the sum of $57,529.60 over the lands within the assessment area in proportion to the benefit received. He had no authority to reduce the amount to be assessed, or to increase the area of assessment. He was bound to assume that every separate parcel of property within the assessment area derived some benefit from the improvement for the board of estimate and apportionment had so determined, and the commissioner was without authority to modify such determination. Hassen v. City of Rochester, 65 N. Y. 516; Id., 67 N. Y. 528.

[2] It is quite beside the mark therefore to pick out, as the respondents do, one or two lots within the assessment area, and to contend that the assessments levied upon them exceed the actual benefit which will accrue to the lots from the improvement. That may be quite true, and yet the assessment may have been lawfully and equitably laid. The propriety of the distribution of the assessment could only be tested by a comparison of all the assessments within the assessment area with the benefit to accrue to each lot.

[3] Even if the papers on appeal contained the necessary data to make such a comparison (which they do not), it would require a very strong case of an abuse of discretion or of manifest error to justify interference by the court. Matter of Mayor, etc., East 176th St., 85 App. Div. 347, 83 N. Y. Supp. 433; Matter of the City of New York, Clinton Avenue, 106 App. Div. 31, 94 N. Y. Supp. 146.

The order appealed from, in so far as it denies the motion for the confirmation of the report of the commissioner of assessment, must therefore be reversed, with $10 costs and disbursements, and the report confirmed. All concur.

---

LOPISI v. DEGNON CONST. CO.

(Supreme Court, Appellate Term. April 22, 1912.)

1. MASTER AND SERVANT (§ 270*)—ADMISSION OF EVIDENCE—FOREMAN'S KNOWLEDGE OF DANGER.

In an employé's action for personal injuries while fastening a chain around a large rock near a sloping bank, by another rock falling and in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

juring him, evidence that defendant's foreman was warned by several workmen on the morning of the accident that the bank was dangerous and that stones were falling was admissible on the question of the foreman's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

**2. MASTER AND SERVANT (§ 182*)—NEGLIGENCE OF SUPERINTENDENT.**

Whether a foreman's negligence is chargeable to his employer under the Employer's Liability Act (Consol. Laws 1909, c. 31, §§ 200–204) depends on whether he was exercising superintendence at the time and whether his alleged negligence occurred with respect to an act of superintendence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. § 182.*]

**3. MASTER AND SERVANT (§ 190*)—FELLOW SERVANTS—FOREMAN.**

Before the Employer's Liability Act (Consol. Laws 1909, c. 31, §§ 200–204) a foreman who was engaged in the details of certain work was a fellow servant with the workmen.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. § 190.*]

**4. MASTER AND SERVANT (§ 179*)—MASTER'S LIABILITY.**

Laws 1902, c. 600, § 1 (Labor Law [Consol. Laws 1909, c. 31] § 200, subd. 2), making an employer liable by reason of the negligence of any person exercising superintendence, whose sole or principal duty is that of superintendence, created an additional cause of action against the employer, changing the common-law rule exempting him from liability for the negligence of a foreman engaged in the details of the work, so as to make him liable for a foreman's negligence while exercising superintendence in respect to an act of superintendence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 354–358; Dec. Dig. § 179.*]

Appeal from City Court of New York, Trial Term.

Action by Tinaro Lopisi against the Degnon Construction Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued February term, 1912, before SEABURY, GUY, and BIJUR, JJ.

Stephen Callaghan, of New York City, for appellant.

Amos H. Stephens, of New York City (William B. Davis and Earle W. Webb, both of New York City, of counsel), for respondent.

BIJUR, J. This action was brought under the Employer's Liability Law for personal injuries to plaintiff resulting from the alleged negligence of defendant. Defendant was excavating the extensive tract west of Sixth avenue, between Thirty-Second and Thirty-Third streets, in this city. Plaintiff had been in defendant's employ for a considerable time as helper to "timber men," placing braces to hold back exposed walls of earth. He was directed by a foreman on October 12, 1909, the day of the accident, to assist a gang of men who were removing rocks. While employed in fastening a chain around a large rock near a steeply sloping bank in a part of the excavation, a rock higher up tumbled down and injured the plaintiff's hand. Plaintiff has, on this appeal, disclaimed any desire to charge the mas-

ter with negligence based on the theory of failure to provide a "safe place" to work.

[1] The first question, then, to be determined is: Did the plaintiff make out a prima facie case of negligence on the part of the foreman? To this I think that, after giving plaintiff the benefit of every intendment and inference to which he is entitled on a motion to dismiss, we must return an affirmative answer. Moreover, evidence that defendant's foreman had been warned by several of the workmen, that very morning, that this bank was in a dangerous condition, and that stones were falling from it, was erroneously excluded by the learned trial judge. This knowledge, on the part of the foreman, of facts which rendered dangerous the manner in which he directed the work to be done, was material on the issue of the foreman's negligence.

[2] The next inquiry is whether the negligence of the foreman is chargeable to the defendant, bearing in mind that this action was brought under the Employer's Liability Act. That again depends, in the first place, on whether the foreman at the time was, as provided in the act, exercising superintendence and whether his alleged negligence occurred in respect of an act of superintendence. See Guilmartin v. Solvay Process Co., 189 N. Y. 490, 82 N. E. 725 (1907). This presented an issue upon which there was at least sufficient evidence to go to the jury.

[3] There remains, then, the question: Assuming that the jury might have found the foreman negligent while exercising superintendence, and in respect of an act of superintendence, would the master have been liable for the foreman's act? The defendant apparently claims that the master is not liable because the act of alleged negligence occurred in the course of the performance of "details of the work." Before the statute, the master was not liable for the negligence of a fellow servant in the detailed prosecution of the work, and "the foreman and workmen are fellow servants." Vogel v. American Bridge Co., 180 N. Y. 373, 380, 73 N. E. 1, 3, 70 L. R. A. 725 (1905). The employer was "responsible only for his own negligence or that of his alter ego—not for the negligence of a coservant." Neagle v. Syracuse, etc., Railroad Co., 185 N. Y. 270, 274, 77 N. E. 1064, 1065, 25 L. R. A. (N. S.) 321 (1906).

[4] What change has the Employer's Liability Act wrought in these relations? We may omit consideration of the more liberal rule as to assumption of risk laid down in section 3 of the act (Laws 1902, c. 600 [Labor Law] § 202) as that either has no application to the case at bar, or would, if the facts in any aspect might be held to render the question pertinent, require by the very terms of the act, submission of that question to the jury. This inquiry addresses itself primarily to section 1 of the act, being section 200 of the Labor Law as it existed at the time of this accident in 1909, prior to the amendment by Laws 1910, c. 352.

The first subdivision of this section relates to an injury caused by an employé "by reason of a defect in the condition of the ways, works, or machinery connected with, or used in, the business of the employer. * * *" As to this section, the Court of Appeals, in

a case decided shortly after the passage of the original act, namely, Gmaehle v. Rosenberg, 178 N. Y. 147, 151, 70 N. E. 411, 412 (1904), remarked:

"We are not prepared to say whether the statute had in any respect increased the liability of the master for defective ways, works, or machinery."

See, also, Nappa v. Erie R. Co., 195 N. Y. 176, 181, 88 N. E. 30, 21 L. R. A. (N. S.) 96 (1909).

We may therefore disregard subdivision 1 of section 200 as having no bearing on the case at bar. On the other hand, when we come to subdivision 2 of section 200, we observe that it makes the employer liable "by reason of the negligence of any person in the service of the employer intrusted with and exercising superintendence, whose sole or principal duty is that of superintendence. . * * *" As was said by the Court of Appeals in the Gmaehle Case, supra:

"It is clear that it has given an additional cause of action, where it prescribes that the master shall be liable for the negligence of the superintendent or any person acting as such."

See, also, McHugh v. Manhattan Ry. Co., 179 N. Y. 378, 383, 72 N. E. 312 (1904).

It is true that in the subsequent case of Payne v. N. Y., etc., R. Co., 201 N. Y. 436, 443, 95 N. E. 19, the court says that this expression as to an additional cause of action "has been too broadly construed"; but that warning applies only to the interpretation of the Gmaehle Case as holding that the statute gives a new cause of action, technically speaking. It remains, however, established with perfect clearness that the effect of the act was to add to the master's responsibility to his servant by making him liable for the negligence of another servant—a foreman, for example—actually engaged in superintendence; whereas, previous to the act, a servant so situated would have been regarded as matter of law as a fellow servant, and the master thus exempted from responsibility for his negligence. It is to be noted that the master's exemption from liability for the negligence of such a "fellow servant" in carrying out the "details of the work," as held in the Vogel Case, supra, and Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021 (1898), almost on all fours with the case at bar, was determined apart from the Employer's Liability Act. The Vogel Case was not brought under the act, and the Perry Case was decided in 1898, four years before the act was passed. In the Neagle Case, supra, the court says expressly:

"This rule has been somewhat modified by the Employer's Liability Act, but that statute was enacted subsequent to the accident before us."

The present state of the law is clearly expressed in the Guilmartin Case, supra, 189 N. Y. 494, 82 N. E. 726, approving the language of Judge Gray in Harris v. Baltimore, etc., Works, 188 N. Y. 141, 80 N. E. 1028:

"That statute gave an additional cause of action, because it prescribed that the master shall be liable for the negligence of the superintendent or the person acting as such. At common law such a liability was not recognized, unless the superintending servant was the alter ego of the master with respect to the work."

It is apparent therefore, that the act has so changed the common law that, instead of the master's exemption from liability for the negligence of a foreman engaged in the details of the prosecution of the work, he has been made liable for the negligence of such a servant exercising superintendence and in respect of an act of superintendence.

For the reasons above stated, I think that the case at bar presented issues, as herein above set forth, which should have been submitted to the determination of the jury on the evidence adduced.

Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur.