## GULF, C. & S. F. RY. CO. v. BELL.
### No. 8371.

Court of Civil Appeals of Texas. Austin.
Jan. 20, 1937.

Rehearing Denied Feb. 3, 1937.

J. B. Daniel, of Temple, Wren, Pearson & Jeffrey, of Fort Worth, and Terry, Cavin & Mills, of Galveston, for appellant.

Ned Elnor Moore, De Witt Bowmer, and Winbourn Pearce, all of Temple, for appellee.

McCLENDON, Chief Justice.

Bell recovered a judgment upon a special issue verdict against the railroad (Gulf, Colorado & Sante Fé Railway Company) in an action for damages for personal injuries. The railroad has appealed.

We are holding that the evidence conclusively shows nonliability on the part of the railroad, and will confine our discussion to that issue.

Bell had been in the employ of the railroad at its Temple Station for about ten years as "trucker" or "platform man." His injuries were alleged to have occurred on August 26, 1930, in the following manner: While he was engaged in cleaning up the barrel house he encountered an empty barrel or drum among the full barrels. Not knowing it was empty, but assuming it to be full, he applied his full weight to tilting it ("breaking it back") so as to move it, and in so doing he was caused to fall backwards striking his elbow on the floor and thereby producing the injury. The alleged act of negligence consisted in permitting an empty barrel to be among the full barrels at a place where only full barrels were customarily placed.

The controlling facts, stated most strongly in support of the judgment, may be briefly summarized. The barrel house opened on its north side onto the depot platform. It was used to store barrels or drums of oils and greases used by the railroad in its operation. Extending along its entire east wall was a barrel rack elevated slightly above the floor and wide enough to accommodate a single row of barrels. The remaining barrels were placed in single parallel rows extending north and south, the rows being separated by an aisle or passageway about three feet wide. When shipments arrived, they were unloaded onto the platform and carried into the barrel house, where they were then arranged as stated, if the time would allow, otherwise they were arranged at a later convenient time. In this arrangement the different kinds of

oils and greases were assorted for convenience in locating. The contents of the barrels on the rack were pumped or drained as need required. When a barrel on the rack became empty it was removed and another barrel lifted in its place. Usually the empty barrels were taken from the barrel house and either "kicked off" the platform or taken to a place of storage for shipment. This operation was usually performed by another employee, but Bell testified he had assisted in lifting barrels onto the rack when requested by this employee. About once a month, and oftener if time would allow, the barrel house was cleaned up. This consisted in sweeping out paper and other trash that had accumulated, and in assorting and lining up the barrels in the manner stated. It was one of Bell's duties to assist in this work. He was thoroughly familiar with it, through an experience of ten years. His testimony supports his allegation that he had never before encountered an empty barrel among the full barrels in the barrel house; at least not in the portion of the barrel house where he encountered the one in question. He admitted, however, that he had on occasion found empties just outside the barrel house on the platform; also that he was instructed by his superiors to remove empties from the barrel house should they be found there on clean up days. We quote from his testimony on this point:

"Q. When you cleaned up the barrel house, you cleaned up the empty barrels? A. I never did take out any.

"Q. Wasn't that one of your instructions on clean up days? A. Yes, sir.

"Q. And your foreman gave you those instructions? A. Yes, sir.

"Q. That was Mr. Pedigo? A. Yes, sir.

"Q. And those instructions also came from Mr. Irwin, General Storekeeper? A. They were from the office. * * *

"Q. It was one of your instructions, on clean up day, to take empties out of the barrel house—that's correct, isn't it? A. Yes, sir."

We have been cited to no case by either party, the facts of which bear a very close analogy to that at bar. We believe, however, that a proper application of well-established principles to the undisputed facts necessarily results in the stated conclusion that no liability was shown. This follows for reasons which we will briefly discuss:

The railroad owed no duty to an employee charged with cleaning up the barrel house and removing empties therefrom, should any be encountered, to see that no empties were left in the barrel house.

It is elementary that negligence in the legal sense, that is, actionable negligence, consists in the breach of some duty of commission or omission owing by the party charged to the one injured as a result of such act or omission. Where no duty to such person exists to act or refrain from acting, no actionable negligence exists.

The American Law Institute, Restatement of the Law of Torts, § 282, defines negligence as "any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for the protection of others against unreasonable risk of harm."

That standard "is that of a reasonable man under like circumstances." Section 283.

Section 284 reads:

"Negligent conduct may be either: (a) an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another, or

"(b) a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do."

It is quite plain to us that by no reasonable standard of conduct should an employer of one charged with the duty to remove empty barrels if encountered be held to owe such employee the duty to see that no empty barrels were present to be removed. Stated differently, under the doctrine of foreseeableness of deleterious consequences, we think such employer may not reasonably be held to foresee that such employee will perform such duties in such manner as to bring injury to himself as a result of encountering an empty barrel.

We do not think the rule that the master is under the legal duty to furnish his servant a safe place to work is here involved. However, under that doctrine no liability would exist for the reason that it was Bell's duty under his employment to remove empty barrels, if and when encountered. For a discussion of this subject see Neagle v. Syracuse, B. & N. Y. R. Co., 185 N.Y. 270, 77 N.E. 1064, 25 L.R.A.(N. S.) 321, and case note. The fact that Bell may never have encountered an empty in

the barrel house during his ten years of employment could not impose upon his employer the duty to see that no empties were left there, in view of the fact he was employed to remove such empties whenever discovered. The duty to remove carried with it the consequent duty to discover if there.

The trial court's judgment is reversed, and judgment is here rendered for appellant.