TEXAS FARM PRODUCTS COMPANY, Appellant,

v.

Paul STOCK, Appellee.

No. 12–82–0019–CV.

Court of Appeals of Texas, Tyler.

Aug. 25, 1983.

Supplemental Opinion Sept. 8, 1983.

William D. Guidry, Nacogdoches, for appellant.

John R. Heath, Forrest G. Braselton, Nacogdoches, for appellee.

## ON MOTION FOR REHEARING

COLLEY, Justice.

Farm Products correctly points out to us by its first assignment of error that we erroneously stated on page 6 of our opinion that Farm Products complained of the trial court's action overruling its motion for *instructed verdict.* We acknowledge that inadvertent error.

Farm Products also contends in its argument under this assignment of error that it did not argue that the "no-duty concept" applies in the master-servant field of law, and that it admitted it owed a non-delegable duty to Stock to provide him a reasonably safe place to work. Farm Products further contends by such assignment that we did not "... address the matters contained in ..." its motion for judgment non obstante veredicto. Farm Products is partially correct; we made an overbroad statement in our opinion respecting the duty issue which will be corrected in the opinion to follow.

In its assignment of error No. 2, Farm Products contends that we erred in failing to address the legal and factual sufficiency of the evidence to support the jury's answers to Special Issues 5, 6, 7, 8, 9, 10 and 12. Farm Products' brief does raise the issue of the legal sufficiency of the evidence as claimed. We acknowledge our error in stating in our opinion that it did not. However, we do not agree with Farm Products' contention that its brief raised the issue of the factual sufficiency of the evidence to support the findings of the jury respecting such issues. Farm Products contends that the statements, argument, and authorities contained in its brief, as well as the oral arguments made, "clearly" apprises the court that Farm Products complains that the evidence is not legally or factually sufficient to support the findings of the jury.

■ Farm Products' points 2, 4, 6, 8, 10, 12, 18 and 22 allege that the trial court "erred in overruling appellant's objection and exception to Special Issue [Nos. 2, 3, 4, 7, 8, 9 and 10] and submitting the same because there is no evidence to support the submission of such [issues]." Farm Products' points of error 3, 5, 7, 9, 11, 13, 19 and 23 are identical points as we have noted in our original opinion. Point 20 in part recites: "The trial court erred in entering judgment based upon the jury findings because the damages under the circumstances were . . . not supported by the evidence." The foregoing points are clearly "no evidence" points and there is no merit to Farm Products' contention that such points raise the question of the factual sufficiency of the evidence to sustain the jury's findings. *McDonald v. New York Central Mutual Fire Ins. Co.,* 380 S.W.2d 545 (Tex.1964). In coming to our conclusion, we have not disregarded the objectives of the Texas Rules of Civil Procedure as proclaimed by Rule 1. We quite agree with former Chief Justice Robert W. Calvert that ". . . magic in words in points of error should be as extinct as the dodo bird." Calvert, "No Evidence and Insufficient Evidence Points of Error," 38 Tex.L.R. 361 (1960). The cases cited by Farm Products in its motion for rehearing in support of the argument that its brief

raised such issue are not applicable here. In *Moore County v. Bergner,* 526 S.W.2d 702 (Tex.Civ.App.—Amarillo 1975, no writ), the points of error were broad, that is: the trial court erred in overruling appellant's motion for judgment on the verdict and in granting appellee's motion for judgment on the verdict. The Amarillo court noted that the appellant's motion for judgment in the trial court alleged specifically the grounds upon which it argued in its brief and found that the points call the court's attention to the questions raised and discussed in the brief and should therefore be addressed. In *Stone v. Enstam,* 541 S.W.2d 473 (Tex.Civ. App.—Dallas 1976, no writ), the points construed by the court expressly recited, "[T]here is no evidence to support the findings . . . . ." and "[T]here is insufficient evidence to support the findings . . . ." Appellant in *Stone v. Enstam* was the plaintiff below and bore the burden of proof on the issues which were the subject of the trial court's adverse findings. The Dallas court construed such points as sufficient to challenge the findings on the basis that they were against the great weight of the evidence when such points were construed along with the brief and oral argument. In our case, points 2, 4, 6, 8, 10, 12, 18 and 22 *are not* overbroad, but specific and clearly raise "no evidence" questions only. Even indulging in the most liberal interpretation of the briefing rules, we cannot conclude that *such points include language* which when construed in light of Farm Products' brief raise the issue of the factual sufficiency of the evidence to support the jury's findings in response to Special Issues 5, 6, 7, 8, 9, 10 and 12. We are of the opinion that the liberal interpretation of appellate briefing rules should not be indulged to the extent that it would abolish the requirements of Subdivision (d) of Rule 418, Tex.R. Civ.P. (Points of Error). It must be remembered that Rule 1 contemplates that a liberal construction of the briefing rules be given to insure a ". . . fair, equitable and impartial . . ." resolution of the rights of the competing parties. The appellate court must test the sufficiency of a point of error

by looking at *both* the language of the point as well as the brief of the argument and the statements referable to the point. *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478 (1943).

Farm Products' motion for rehearing is granted to the extent noted above respecting assignments of error Nos. 1 and 2. We have carefully reviewed the other assignments of error and each of them is overruled.

The opinion delivered by this court on June 30, 1983, as well as the supplemental opinion delivered by this court on July 14, 1983, are withdrawn and the following opinion substituted therefor:

Plaintiff-appellee Paul Stock brought this action against defendant-appellant Texas Farm Products Company for personal injuries sustained by him while working within the course and scope of his employment with Farm Products, a corporation subject to the provisions of Article 8306, et seq., of the Worker's Compensation Act, but not a subscriber to a policy of worker's compensation insurance under the act. Stock, based on jury findings, was granted a judgment by the trial court for money damages in the total sum of $219,670. By its points of error Farm Products complains that: (1) the trial court erred in overruling its motion for judgment n.o.v. because Stock's evidence failed to establish that Farm Products owed a duty to Stock to inspect the floor for grease and remove it; (2) the trial court erred in overruling its objection to the court's charge and in submitting certain special issues because the evidence was insufficient to warrant the submission of same; (3) the trial court erred in submitting special issue 2 without accompanying instruction limiting the inquiry to the jury to acts alleged to be negligent and supported by evidence at the trial; (4) the judgment was erroneously entered without a jury finding that the grease had been on the floor for a sufficient length of time so that the agents, officers, servants and employees (other than Stock) in the exercise of ordinary care could have discovered and removed it; (5) the misconduct of Stock's trial counsel created prejudice against it, causing the rendition of an improper judgment; (6) the instruction accompanying the damage issue was confusing and misleading to the jury resulting in a triple recovery by Stock of damages; (7) there is no evidence to support the jury's answers to Special Issues Nos. 2, 3, 4, 7, 8, 9, 10 and 12; and (8) the jury verdict awarded excessive damages based on prejudice and passion.

We reform and affirm the judgment of the trial court conditioned that Stock file his written remittitur as herein ordered.

The record reveals the following facts: On February 27, 1980, Stock, then a fifty-four year old white male employed as a mechanic by Farm Products in its shop in Nacogdoches, Texas, went to his place of employment and, when entering the "stall" or work bay where he worked (known as stall No. 5 in this case), slipped and fell on his buttocks. Immediately after his fall another employee observed a "smear" of grease about the size of a "fifty cent piece" on the floor in the area where Stock fell. Such employee pointed the spot of grease out to Stock. Stock complained of pain after the fall and was taken to the hospital by one of the foremen, Jimmy Grimes. Stock was admitted to Nacogdoches Memorial Hospital on the 27th day of February, 1980, and remained there until March 10, 1980, under the primary care of Dr. Anthony W. Jorgenson, an orthopedic surgeon. Dr. Jorgenson was produced as a witness by Farm Products. Jorgenson, based upon his physical examination of Stock and a battery of x-rays, testified that Stock was afflicted with a rare bone disease, to-wit: Osteogenesis Imperfecta. Dr. Jorgenson stated that the disease is characterized by thin, soft and weak bones which tend to become deformed by the ordinary weight bearing processes and activities of ordinary life; that ligaments and tendons of the body and other connecting tissues are also affected by the disease and tend to be of poor quality; and that slight injury or trauma to a bone of the body of the person suffering from this disease causes a fracture of the bone in most cases. Joints are likewise affected

and become unstable and deformed. Dr. Jorgenson described Stock's back as generally deformed in the sense that all vertebrae in his spine were flattened. Jorgenson testified that the x-ray studies showed multiple old fractures of Stock's legs; that the physical examination of Stock revealed bowed legs secondary to the disease; and that Stock had an abnormal gait which Jorgenson described as "duck waddling," due to the disparity in leg lengths and the bowing of the thigh bone in each of the legs caused by Osteogenesis Imperfecta. He also testified that x-rays taken on February 27, 1980, revealed a compression fracture of Stock's second lumbar vertebrae (L–2) which had a different appearance from the other flattened vertebrae in the spine of Stock. Dr. Jorgenson released Stock to return to light duty work on June 26, 1980, after determining that the compression fracture of L–2 was stable and had healed. Dr. Jorgenson testified further that the fracture of L–2 did not aggravate Stock's pre-existing condition and that physical activity would be beneficial to Stock's back. Dr. Jorgenson also testified that no surgery would be indicated on L–2 because of the bone disease which Stock was suffering. After Stock complained to Dr. Jorgenson about weakness in his left leg, he was referred to a neurological surgeon, Dr. John Theodore Robson, who saw Stock one time on December 20, 1980, for about an hour. Dr. Robson was produced at trial by Stock as his witness. Dr. Robson's testimony confirmed Jorgenson's diagnosis both as to the existence of the congenital disease and the compression fracture of Stock's second lumbar vertebrae. Dr. Robson also testified that Stock's fifth lumbar vertebrae was grossly displaced; that Stock's left leg was four centimeters shorter than his right leg; and that the compression fracture of Stock's L–2 vertebrae could not be treated because of the presence of the Osteogenesis Impertecta and its effect on the bony structure and connective tissues of Stock's body. Dr. Robson testified that the compression fracture of L–2 had produced nerve root pressure, causing pain to Stock; that the compression fracture of L–2 was disabling;

and that there was no treatment he could administer to Stock to correct the problem. Dr. Robson testified that Stock's disability was produced by pain. Robson then testified that Stock's disabling condition was produced by the combination of the effect on his body of the disease and the compression fracture of L–2.

Both medical witnesses testified that Stock was a well-motivated and "gutsy" fellow because of his work history, given the nature, duration and course of the disease which he suffered. Dr. Florence Jorgenson, a radiologist, testified for Farm Products by deposition. Her testimony generally confirms the diagnosis made by Drs. Jorgenson and Robson as respects the congenital disease suffered by Stock, as well as the compression fracture of his second lumbar vertebrae. Dr. Florence Jorgenson also testified that her x-ray studies showed that Stock had in the past suffered compression fractures of virtually all of the vertebral bodies in his spine. Stock testified that he became aware of his bone disease in 1957; that he sustained various fractures to his legs in the years 1943, 1957, 1961, and sometime during the mid-1960's; and that in 1970 he suffered a fracture to both of his "shoulder bones." Stock stated that he worked for Farm Products from December 1979 to February 27, 1980, as a general mechanic; that he was earning wages at the rate of $5.00 per hour at the time of his fall; and that he worked on the average of about fifty-five hours each week. He also testified that on February 26, 1980, he worked from 5:30 a.m. to 4:00 p.m.; that, following the policy of Farm Products "that each mechanic was responsible for keeping his own work area clean,' he cleaned up his stall or work bay before he left work on the afternoon of February 26, 1980; that there was no grease on the floor of his stall when he left work on that day; that on February 27, 1980, he arrived at the shop at about 5:30 a.m., drank coffee and visited with other employees; and that around 6:15 a.m. when he started across to his stall to resume work on two fertilizer spreaders he fell on the concrete floor of

stall No. 5 or No. 4. Stock described the floor as "slippery" because it was painted with a "slick" finish on it. Stock testified he fell in a "sitting position," landing on his buttocks. He experienced pain from the fall and was soon thereafter taken to the hospital in Nacogdoches by Jimmy Grimes. Stock testified that he did not see the grease on the floor until it was pointed out to him by a fellow employee after the fall. He further testified that the spot of grease pointed out to him on the floor in the area where he fell was anywhere from three to four inches in diameter. Stock's testimony reveals that on the day before the fall he had packed (greased) four wheel bearings on one of the spreaders he was working on, but that he took the bearings in a bucket and went to the grease room in a different location of the shop, packed the bearings with a grease gun, then placed the bearings in a bucket and returned to his work area.

It is undisputed that the grease was on the floor where Stock fell. It is further undisputed that no one saw the grease *before* Stock fell. There is no direct evidence showing that any of Farm Products' employees placed or spilled grease on the floor. On February 26, 1980, two shifts worked in the shop: a morning shift (Stock's shift) and an evening shift which worked from 4:00 p.m. until 11:00 p.m. It is undisputed that no employee worked in stall No. 5 during the evening shift on February 26, 1980. Shop foreman, Murph King, testifying for Farm Products, stated that Farm Products' policy was to require each mechanic or his helper to be responsible for keeping his own area clean. King further testified that no other employee had any responsibility for clean-up in any of the mechanic's work bays or stalls. The evidence shows without dispute that no clean-up crew was utilized to clean up or inspect the work areas between shifts. There is no evidence in the record that any employee, other than each mechanic, has the responsibility for inspecting the work areas at any time. There is no evidence in the record that on February 27, 1980, any employee used grease in the area of stalls 4 or 5. One employee, Albert McBride, testified that

the morning shift on February 27, 1980, had not used any grease in the area where Stock fell before the time of the fall.

■ By its first point of error Farm Products complains that the trial court erred in overruling its motion for judgment non obstante veredicto at the close of the evidence because no evidence was produced by Stock establishing actionable negligence against it. While Farm Products concedes it had a non-delegable duty to provide Stock with a reasonably safe place to work, it argues that the evidence did not establish that it owed a duty to Stock to inspect for grease on the floor where Stock worked, and to remove same, and that hence Stock failed to establish a cause of action for actionable negligence. Farm Products cites in support of this argument *Gulf v. Bell,* 101 S.W.2d 363 (Tex.Civ.App.—Austin 1937, writ dism'd). We have read *Gulf v. Bell* but our research reveals that such holding was overruled by the decision of the Texas Supreme Court in *Sears Roebuck & Co. v. Robinson,* 154 Tex. 336, 280 S.W.2d 238 (1955). In that case, the Supreme Court rejected the application of the "no-duty" concept in the master-servant field of the law. Additionally, the so-called "no-duty" concept has now been abolished in all negligence actions. *Parker v. Highland Park Inc.,* 565 S.W.2d 512 (Tex.1978). Our later discussion of the evidence demonstrates why we hold there is some evidence, more than a scintilla, to raise actionable negligence on the part of Farm Products in this case and to support the jury's findings in response to Special Issues 7, 8 and 9. The trial court's action was correct in overruling Farm Products' motion for judgment n.o.v., and its first point is overruled.

■ By its points of error 2, 4, 6, 8, 10 and 12, Farm Products contends that the trial court erred in overruling its objections to the court's charge and to the submission of Special Issues 2, 3, 4, 7, 8 and 9 because no evidence was produced by Stock to raise or support the submission of the same or to support the findings made by the jury in response to such issue.

The jury in response to such issues found (2) that Farm Products failed to furnish Stock a reasonably safe place to work; (3) that such failure was negligence; and (4) a proximate cause of Stock's fall; (7) that the grease had remained on the floor for sufficient length of time that the agents, officers, servants and employees (other than Stock), in the exercise of ordinary care should have "... known of it"; (8) that the conduct of such agents, officers, servants and employees in "... allowing the grease to remain on the floor until Stock fell was negligence"; and (9) that such negligence was a proximate cause of the fall.

We have carefully reviewed the evidence in this case, and considering only the evidence tending to support the submission of Special Issues 2, 3, 4, 7, 8 and 9 and the findings of the jury in response thereto, we hold that the evidence is legally sufficient to warrant the submission of such issues and to support the jury's answers. It is undisputed that the grease was on the floor on February 27, 1980, at or about 6:00 a.m., and that Stock slipped on it and fell. Stock testified that he cleaned up his stall on the afternoon before the fall and that there was no grease on the floor when he left work on February 26, 1980. The undisputed facts show Farm Products had no clean-up crew or employees on duty charged with the responsibility of cleaning or inspecting the work areas of the mechanics between shifts. As argued by Farm Products, and as shown by the evidence, most automotive shops, such as Farm Products, has grease and oil on the floor at times, and it is not unusual for it to be so. The evidence shows that frequently grease is left on the floor of Farm Products' shop between work shifts. Farm Products' witness, Reginald Hudson, testified that it is not unusual for there to be grease and oil on the floor of an automotive shop. Kelly King, a diesel mechanic for Farm Products, was produced as a witness in its behalf and testified that frequently grease was spilled on the floor of the shop and remained there between shifts

at intervals of at least once a week. James Key, another witness produced by Farm Products, testified that he was an auto mechanic teacher for the Nacogdoches Independent School District with ten year's experience in that job and seventeen year's experience as an independent garage man. Key stated in his testimony that he taught courses in safety practices in automotive shops; that a policy of requiring each mechanic to clean up his own work area was an accepted practice in that industry. Key also testified that failure to have a general clean-up crew between working shifts to clean up grease left between shifts where six hours or more have elapsed between shifts was an unsafe practice. Points 2, 4, 6, 8, 10 and 12 are overruled.

■ By its points of error 3, 5, 7, 9, 11 and 13, Farm Products contends that the court erred in overruling its objections to the court's charge and that the evidence was insufficient to support the submission of special issues 2, 3, 4, 7, 8 and 9. These points of error are identical with appellant's points 2, 4, 6, 8, 10 and 12. The word "insufficient" found in Rule 279, Tex.R. Civ.P., does not mean that the evidence is factually insufficient to support an affirmative finding on any issue, but rather that there is no evidence to warrant the submission of the issue. Rule 279; *Myers v. Crenshaw*, 134 Tex. 500, 137 S.W.2d 7 (Tex. Comm'n App.1940, opinion adopted); *Simon v. Hendrichson*, 394 S.W.2d 249, 257 (Tex. Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.); *see also*, Rule 301; and *Eubanks v. Winn*, 420 S.W.2d 698 (Tex.1967). Points 3, 5, 7, 9, 11 and 13 are overruled.

■ One of the issues raised by Farm Products' point 16 is that the third paragraph of the instructions accompanying Special Issue No. 2 is "... a misstatement of the law...." Argument under this point reveals that the issue raised is that the instruction [1] permits the jury to charge the contributory negligence of Stock to

---

1. You are instructed that the Defendant, Texas Farm Products Company, is responsible for negligent acts, if any, that may be committed

by any of its employees, acting in the course and scope of their employment.

Farm Products. Although Farm Products did not allege that the contributory negligence of Stock constituted the sole proximate cause of his fall and injuries, we hold that the trial court did err in overruling Farm Products' objection to such instructions and in refusing to instruct the jury not to consider the negligence, if any, of Stock in arriving at their answer to Special Issue No. 2 and to that extent point 16 is sustained. In a suit of this character, the provisions of Section 1 of Article 8306 of the Worker's Compensation Act strips from the non-subscribing employer the defense of contributory negligence; nevertheless, negligence of the injured worker which is the *sole* proximate cause of his injuries defeats his recovery. *Najera v. Great Atlantic & Pacific Tea Co.,* 146 Tex. 367, 207 S.W.2d 365 (1948). Thus, it logically follows that if the injured employee recovers, such recovery cannot be based on his negligence, but rather must be based on the actionable negligence of the employer or the *other* agents, officers, servants and employees of said employer. Article 8306 Sections 1 and 4; *Najera, supra.* However, we find the error harmless because the judgment is supported by the findings of the jury in response to Special Issues 5, 6, 7, 8 and 9, and consequently the jury's answer to Special Issue 2 is immaterial. Therefore, we do not address any further contentions raised by Farm Products in its points 15 and 16.

 By its point of error 14, Farm Products contends that Stock failed to secure a jury finding that the grease remained on the floor of the shop for a sufficient length of time so that Farm Products, in the exercise of ordinary care, should have discovered and removed the same before the fall. In point of error No. 17 Farm Products attacks the trial court's action in overruling its objection to the form of Special Issue No. 7 claiming the issue does not inquire whether the grease had been on the floor for a sufficient length of time for the agents, officers, servants and employees (other than Stock) in the exercise of ordinary care, not only to have discovered, but to have *removed* the grease. Farm Products' argument under points 14 and 17 ignores the jury's findings in response to Special Issue No. 8. In "slip and fall" cases, before common law liability can be established against the premises owner-operator, a plaintiff-invitee must prove: (1) that the defendant put the substance on the floor, or (2) that the defendant knew the substance was on the floor and either willfully or negligently refused or failed to remove it; or (3) that *the substance had been on the floor for such a period of time that it would have been discovered and removed by the defendant, had the defendant exercised ordinary care.* *H.E. Butt Grocery Co. v. Johnson,* 226 S.W.2d 501, 502 (Tex.Civ.App. —San Antonio 1949, writ ref'd n.r.e.) and cases cited therein. In the instant case, the record conclusively establishes that there was grease on the shop floor in the area where Stock fell. The jury so found in its answer to Special Issue No. 6. By its answer to Special Issues 7, 8 and 9, the jury found that the grease had been on the floor for a sufficient length of time for the agents, officers, servants and employees of Farm Products in the exercise of ordinary care, to have known of it and that the officers, agents, servants or employees in allowing the grease to remain on the floor until the time of Stock's fall was negligence, which was a proximate cause of "... the occurrence in question as previously stated." Farm Products' brief does not raise the issue of the factual sufficiency of the evidence to support these findings. We hold that the findings made by the jury in response to Special Issues 6, 7, 8 and 9 are sufficient to establish the liability of Farm Products to Stock in this action for the injuries he sustained in the fall. *H.E. Butt Grocery Co. v. Johnson, supra.* Points 14 and 17 are overruled.

 Under its point 21 Farm Products argues that the trial court erred in overruling its motion for mistrial because of the misconduct of Stock's counsel. Farm Products argues that the conduct of counsel created such prejudice against it as to cause a rendition of an improper judgment. The misconduct complained of was Stock's trial counsel's remarks made in the presence of

the jury. Farm Products sought on cross-examination of Stock to impeach his credibility by introducing as an exhibit a pleading made by Stock in a prior worker's compensation suit filed by Stock as plaintiff. Stock's counsel objected to the introduction of the pleadings unless (counsel) "... will agree to introduce ... the judgment of the court ... so that the jury will have a complete picture of the claim...." The trial judge overruled this objection, but later Stock's counsel repeated the objection which was again overruled. Counsel repeated the same objection for the third time with the additional comment "... [Farm Products' counsel] is refusing to put in the judgment of the court in this case. Is that correct (counsel)[?]" Immediately thereafter the trial judge instructed the jury not to consider these remarks of Stock's counsel or draw any inferences therefrom in their consideration of the case. Farm Products' motion for mistrial was overruled. Farm Products argues that since the conduct of counsel was reasonably calculated to prejudice its rights an injury is presumed, citing, inter alia, *Woodrum Truck Lines v. Bailey,* 57 S.W.2d 92 (Comm'n App.1933, judgment approved). Upon the promulgation of Rule 434, *Woodrum Truck Lines* lost its precedential value on this point. Rule 434 requires that before a court of appeals can reverse a judgment because of conduct of counsel, it must appear from the record that (1) an argument, statement or conduct of counsel must be improper and (2) the reviewing court must be satisfied that the argument, statement or misconduct was reasonably calculated to cause and *did cause the rendition of an improper judgment.* *Aultman v. Dallas Rw. & Terminal Co.,* 152 Tex. 509, 260 S.W.2d 596 (1953). Obviously counsel's remarks were improper under the circumstances shown by this record. But we find that the trial court's prompt and cogent instruction to the jury rendered the improper conduct harmless. We hold that in light of the entire record the effect, if any, of the inappropriate remarks of Stock's counsel were cured by the instructions given by the trial court. *Walker v. Texas Employer's Ins. Assoc.,* 155 Tex. 617, 291 S.W.2d 298, 302 (1956). Farm Products cites in support of its argument that the misconduct of counsel complained of here constitutes reversible error the case of *Magaline v. Harrison Truck Lines,* 446 S.W.2d 920 (Tex.Civ.App.—Houston 1969, writ ref'd n.r.e.). In *Magaline* defense counsel's argument improperly placed before the jury facts which counsel contends could have been elicited from persons equally available to both plaintiff and defendant in the case, unfavorable to the plaintiff, and which bore directly on a critical and hotly disputed issue in the case. The opinion by Justice Johnson characterized the argument as improperly submitting, "... the substance of unsworn (outside the record) testimony of numerous witnesses on the most critical point in issue to the jury." In our case counsel's remarks, though improper and prejudicial, only tended to inform the jury that Stock did recover a judgment in the prior worker's compensation case in some amount. Such information neither lessened the impact of the impeachment of the credibility of Stock nor submitted facts to the jury bearing on any disputed issue in this case. Farm Products' point 21 is overruled.

Farm Products contends by its point 24 that the form of Special Issue No. 10 (damage issue) was misleading and confusing to the jury. Our examination of the record shows that Farm Products failed to request a substantially correct explanatory instruction to accompany that special issue, and thus the error, if any, is waived. Rule 279, Tex.R.Civ.P.; *Adams v. Harris,* 564 S.W.2d 152 (Tex.Civ.App.—Houston [14th] 1978, writ ref'd n.r.e.); *Green v. Baldree,* 497 S.W.2d 342 (Tex.Civ.App.—Houston [14th] 1973, no writ). In any event we hold that Special Issue No. 10 (the main damage issue) is not confusing or misleading nor does it authorize a double recovery for the same elements of damage as claimed by Farm Products. *Missouri, K. & T. Ry. Co. of Texas v. Aycock,* 135 S.W. 198 (Tex.Civ. App.1911, writ ref'd); *El Paso City Lines, Inc. v. Benjamin,* 451 S.W.2d 257 (Tex.Civ. App.—El Paso 1970, writ ref'd n.r.e.); *French v. Grigsby,* 567 S.W.2d 604 (Tex.Civ.

App.—Beaumont) writ ref'd n.r.e. *per curiam*, 571 S.W.2d 867 (Tex.1978). Also we note that Special Issue No. 10 as submitted to the jury is almost identical with the issue set forth under Section 80.03 of Texas Pattern Jury Charges, Vol. 3, p. 278 (1982).[2]

■ Farm Products points 18 and 22 are identical with points 19 and 23. By these points Farm Products argues that there is no evidence to support the submission of Special Issue No. 10 and the jury's answer thereto. Point 22 also specifically claims that there is no evidence to support the jury's finding in response to parts (e) and (f) of Special Issue No. 10 inquiring about damages for Stock's past and future physical impairment. By point 20 Farm Products claims that the trial court erred in rendering judgment on the verdict because the damages awarded are excessive, and there is no evidence to support the damages awarded by the jury.

The jury awarded Stock damages in the total amount of $219,670.00, broken down as follows:

### SPECIAL ISSUE NO. 10

(a) past pain and mental anguish, $1,000

(b) future pain and mental anguish, $11,000;

(c) past loss of earnings, $15,300;

(d) future loss of earning capacity, $143,000;

(e) past physical impairment, $1,870;

(f) future physical impairment, $37,500; and

### SPECIAL ISSUE NO. 12

future medical expenses, $10,000.

A brief additional discussion of the evidence in this case is necessary. Stock testified that he was fifty-five years of age at the time of the trial and that he had worked over thirty years as a truck driver and truck mechanic; that in 1977 he cleared about $15,000 driving a truck; and that in 1978 he cleared about $20,000 from the

same activity. Stock also testified that he was in constant pain since his fall and could not sit for long periods of time. The evidence also shows that a mechanic working for Farm Products performing the same work that Stock formerly did was receiving at the time of trial $6.75 per hour and was working between forty and fifty hours each week. Dr. Robson testified that Stock was permanently disabled because of the fracture at L–2 which he sustained in the fall and from the effects of the disease he suffered. Dr. Robson also testified that Stock would incur about $1,000 per year for medical expenses in future years.

The only evidence offered bearing directly on Stock's physical impairment was his testimony. He testified that because of the poor quality of his home water supply when he made coffee, he usually went to a neighbor's house and brought back a full bucket of water; that after his injury he could only carry one-half of a bucket of water; and that he could still drive an automobile, but could not drive on long trips without rest and walking exercises because of the onset of pain produced by long periods of sitting. The record also shows that at least on one occasion during the trial that he stood up for the same reason, pain while sitting. Dr. Robson's testimony clearly demonstrates that Stock's disability was solely due to pain produced by nerve root pressure at his second lumbar vertebrae which prevented him from performing the task of a workman. The evidence also reveals that after his release to light duty by Dr. Wayne Jorgenson in June, 1980, Stock returned to duty at Farm Products' shop and worked until September, 1980, at which time he was terminated because he could not perform the work. The record is devoid of any evidence demonstrating what physical activities, recreational or otherwise, that Stock was unable to perform (other than the instances herein mentioned). The evidence does show that Stock is able to drive

---

2. In the issue, the trial court instructed the jury: "Answer separately in dollars and cents, if any, with respect to each of the following elements." And also instructed the jury: "Consider each element of damage separately so as not to include damages for one element in any other element that you may answer."

an automobile and that he lives alone and cooks his own meals.

Considering only the evidence and the reasonable inferences arising therefrom found in the record tending to support the findings made by the jury in response to Special Issues 10 and 12, we hold that there is some evidence, more than a scintilla, to support the submission of such issues, as well as the findings made in response thereto. Points 18, 19, 22 and 23 and point 20 to the extent that it complains of the legal sufficiency of the evidence to support these findings are overruled.

■■■ Finally, Farm Products complains in point 20 that the verdict and judgment awards Stock excessive damages based wholly on passion and prejudice. The question of whether the amount of a verdict and judgment is excessive is a question of fact. *Dallas Ry. & Terminal Co. v. Farnsworth,* 148 Tex. 584, 227 S.W.2d 1017 (1950); *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835 (1959). In the absence of an affirmative showing that passion, prejudice or some other improper motivation controlled the jury's award of damages, rendering the jury incapable, or at least unwilling to award an amount of damages that fairly compensates the plaintiff, under the evidence for the injuries sustained, a proper remittitur may be ordered by the Court of Appeals but a reversal and remand of the case is not required. *World Oil Co. v. Hicks,* 129 Tex. 297, 103 S.W.2d 962 (Tex. Comm'n App.1937, opinion adopted). In fact, a Court of Appeals which reverses because of a mere excessiveness of the amount of the verdict alone without authorizing an appropriate remittitur commits error. Tex.R.Civ.P. 440; *Carter v. Texarkana Bus Co. Inc.,* 156 Tex. 285, 295 S.W.2d 653 (1956).

■■■ From our review of the record in this case, we find no affirmative showing that the jury's verdict is a product of passion, prejudice or any other improper motivation. Excessiveness of the verdict alone does not establish that the jury was motivated by passion and prejudice unless the verdict is shocking to the judicial conscience. *World Oil Co. v. Hicks, supra.*

■■■ We hold that the amount of the verdict and judgment is excessive, and we sustain Farm Products' point 20 to that extent. We have arrived at this conclusion after a careful review of all the evidence in this case bearing upon the issue of damages. In the exercise of our judicial judgment and discretion we find that the amount of $180,300 would be fair and reasonable compensation to be awarded to Stock for the injury he sustained. Therefore, having found that no reversible error is presented in this appeal, we will reform and affirm the trial court's judgment if Stock files his written remittitur in the sum of $39,370 within fifteen days from the date of the delivery of this opinion; otherwise, the judgment will be reversed and the cause remanded for a new trial.

## SUPPLEMENTAL OPINION

On August 25, 1983, this court delivered its opinion affirming the judgment of the trial court below conditioned that appellee Stock file his written remittitur in the sum of $39,370.00 within 15 days from August 25, 1983. The written remittitur suggested has been duly filed.

The judgment of the trial court is thus reformed to show that Paul Stock recover over and against Texas Farm Products the sum of $180,300.00, together with interest thereon at the rate of nine percent (9%) per annum until paid. Costs of this appeal are assessed eighty percent (80%) against Texas Farm Products and twenty percent (20%) against Paul Stock.

The judgment of the trial court as reformed is affirmed.